Stark **RITCHIE**, Plaintiff-Appellant,

v.

Ralph **LANDAU**, Defendant-Appellee.

Docket No. 72–1672.

United States Court of Appeals,
Second Circuit.

Argued Nov. 30, 1972.

Decided March 14, 1973.

Vincent L. Broderick, C. Douglas Webb, Forsyth, Decker, Murray & Broderick, New York City, for plaintiff-appellant.

Guy C. Quinlan, Caesar L. Pitassy, Royall, Koegel & Wells, New York City, for defendant-appellee.

Before FRIENDLY, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

Plaintiff-appellant, a lawyer, commenced this diversity action in the United States District Court for the Southern District of New York by filing a complaint on November 18, 1970, in which he named two defendants, first, Ralph Landau, a 43% stockholder in Halcon International, Inc., its president and its chief operating officer, and, second, Halcon International, Inc. (Halcon) a Delaware corporation engaged in the petrochemical business. Plaintiff set forth in the complaint that he had been employed by Halcon, first in its legal department and later as its general counsel, and that he had executed a two year renewal of his employment contract with it because Landau, both individually and as president of Halcon, had promised him a substantial bonus if Halcon obtained recoveries from certain Italian corporations with which Halcon had licensing agreements. Plaintiff set forth that through his labors and pursuant to his advice Halcon had initiated a suit in the Southern District of New York against these Italian corporations seek-

ing damages for their violations of Halcon's licensing agreements with them, and the alleged bonus was to be paid if plaintiff was successful in persuading the United States Department of Commerce, Office of Export Control, to issue a "charging letter" against the Italian corporations which Halcon was claiming had reexported Halcon's petrochemical processes to Czechoslovakia in violation of both the United States export control laws and the licensing agreements between the Italian corporations and Halcon. The "charging letter" was issued and, fourteen months later, partially as a result of plaintiff's efforts, Halcon recovered $8,500,000 from these Italian concerns in an out of court settlement. No satisfactory bonus having been offered or paid to him and his employment having been terminated, Ritchie sued both defendants in both contract and quantum meruit, claiming the total damages of $2,112,000 in each count,[1] asserting that this was a fair sum in view of Halcon's $8,500,000 recovery against the Italian concerns.

After the complaint was filed defendant Halcon commenced a proceeding in the American Arbitration Association pursuant to an arbitration clause in plaintiff's employment contract with Halcon, seeking a declaration that plaintiff was not entitled to the bonus for which he had brought suit in district court. Court proceedings as to Halcon were ordered stayed until arbitration had been had. Concurrently, Landau filed a motion to dismiss the complaint as to him, and this motion was held in abeyance, on consent of the parties, pending arbitration.

Plaintiff then submitted his claim against Halcon to the arbitration panel. He counterclaimed for the total bonus of $2,112,000 which he had demanded in his district court complaint. After three days of detailed proceedings, the arbitrators reduced plaintiff's claim and awarded him a bonus of $200,000 with costs of $5450 "in full settlement of all claims and counterclaims submitted to this Arbitration." On plaintiff's motion this award was confirmed and reduced to judgment in the New York State Supreme Court, and Halcon paid the judgment.

Thereupon the counts against Halcon in the district court action were dismissed, leaving the counts against Landau in his individual capacity awaiting decision upon Landau's motion to dismiss them. Before finally ruling on that motion the court permitted Ritchie to file an amended complaint.

In the amended complaint, Ritchie, alleging the same facts which were alleged in the original complaint and which were presented to the arbitrators, sought from Landau the same damages of $2,112,000, reduced by the $200,000 paid by Halcon. In addition to these restated counts in contract and quantum meruit, Ritchie added an additional count in which he alleged that Landau had fraudulently and deceitfully induced him to execute the two year extension of his employment contract on the promise that he would be paid a substantial bonus—a promise which Ritchie alleged Landau never intended to keep—and, in addition to his claim for $1,912,000 compensatory damages, he additionally sought in this new cause of action $500,000 in punitive damages and $99,000 for attorneys' fees and litigation expense.

Defendant Landau moved, pursuant to Rules 12(b)(6) and 56 of the Fed.R. Civ.P., to dismiss the amended complaint. The trial judge found that the realleged contract and quantum meruit claims relative to the bonus issue had already been litigated and reduced to judgment in the arbitration proceeding, and he held that by the application of the doctrine of collateral estoppel plaintiff was therefore estopped from reasserting them a second time. He also dismissed the post-arbitration cause of

---

1. The bonus Ritchie claimed he was entitled to was $2,125,000, twenty-five per cent of $8,500,000. However, inasmuch as Landau had allegedly advanced $13,000 the remainder which was claimed was $2,-112,000.

action sounding in fraud, in which Ritchie had alleged that he had been fraudulently induced to extend his employment contract, for he found that this newly pleaded cause of action was only a semantic ploy to circumvent the collateral estoppel defense.

■ In a diversity action in federal court the state law is controlling on the question of the applicability of the collateral estoppel doctrine to a given set of circumstances. Breeland v. Security Insurance Co. of New Haven, Conn., 421 F.2d 918 (5 Cir. 1969); Priest v. American Smelting and Refining Company, 409 F.2d 1229 (9 Cir. 1969); Graves v. Associated Transport, Inc., 344 F.2d 894 (4 Cir. 1965); Blum v. William Goldman Theatres, 174 F.2d 914 (3 Cir. 1949).

After a careful review of the entire record and after applying the New York law of collateral estoppel to the facts as pleaded by plaintiff and as developed on the record, we conclude that the judgment below should be affirmed.

In this appeal defendant Landau raises the defense of collateral estoppel against Ritchie on the ground that Ritchie has already had a fair opportunity to litigate his claim for his bonus in the arbitration proceeding. At that time Ritchie testified extensively on his own behalf and he also cross-examined Landau and other hostile witnesses. In fact, Ritchie appears almost to concede that under the present New York rule which has relaxed an older more rigid concept of "mutuality," Landau is not precluded from raising the collateral estoppel defense despite the fact that technically he was not a named party to the arbitration proceeding which had been initiated by the corporate defendant. In order to avoid the fatal effects of the defense, however, Ritchie now argues that the claim presented to the arbitrators was for only a part of the bonus he had sought, i. e., a part owed by Halcon, and that he has never received a fair hearing on the other part, a bonus portion allegedly owed by Landau personally. This belated contention is belied by the clear state of the record. At no time prior to the arbitration proceeding, or during the arbitration proceeding, did plaintiff contend that the bonus claim was divisible into two parts and that only one of them was being arbitrated. Although the original complaint filed in district court contained four counts, two against Halcon as a corporate defendant and two against Landau individually, the clear implication of the complaint is that Halcon and Landau are being sued for the same bonus that Landau allegedly orally promised Ritchie. Indeed, the amount of relief requested in each of the four counts is $2,112,000, the total amount of the alleged bonus—not a portion thereof. Likewise, the complaint submitted by Ritchie to the panel of arbitrators does not indicate that he is seeking an award of only a part of his claim. If Ritchie had been presenting the arbitrators with only "part" of the total relief he desired, his counterclaim would surely have contained explicit language to this effect, and the award which he demanded would have been for a proportionate part of the total, for only the corporation's share of the $2,112,000. Moreover, our detailed examination of the transcript of the arbitration proceedings uncovers nothing which suggests that the arbitrators believed they were adjudicating only part of the bonus claim. No testimony was introduced by either party on the issues of any "partial or proportional liability," or, if any bonus were owed to Ritchie, what part of it was owed by Halcon and what part by Landau individually. The plain language of the arbitrator's award seems dispositive of this issue. It states: "This Award is in *full settlement* (emphasis added) of all claims and counterclaims submitted to this Arbitration." The counterclaim sought an award of $2,112,000 and the Arbitrators disposed of it by allowing $200,000. We find no merit to plaintiff's contention that there lurks within the bonus claim an unidentified proportionable divisibility between Halcon and Landau.

By the amended complaint plaintiff seeks to litigate the entire bonus issue a second time. However, he has had a full and fair opportunity to litigate it, and we agree with the court below that he cannot now relitigate it. Even if it were to be concluded that there is a "failure of mutuality" here—a point about which we have serious doubt but need not decide—[2]under New York law Landau's defense of collateral estoppel can prevail despite the fact that he was not a party to the arbitration proceeding in an individual capacity. The New York Court of Appeals has referred to the doctrine of mutuality as a "dead letter." B. R. De Witt, Inc. v. Hall, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E. 2d 195 (1967). In determining whether one not a party to a prior proceeding can successfully raise the defense of collateral estoppel as to an issue which had been litigated in that prior proceeding, New York State has adopted the "full and fair opportunity" test. Under this test the defense is available if the party against whom it is raised has had a full and fair opportunity to contest the issue in a prior action and the issue which was decided in the prior action is identical to the issue which is to be decided in the action in which the defense is raised.[3] Schwartz v. Public Adm. of County of Bronx, 24 N.Y.2d 65, 298 N. Y.S.2d 955, 246 N.E.2d 725 (1969); James Talcott, Inc. v. Allahabad Bank, Ltd., 444 F.2d 451 (5 Cir. 1971)), cert. denied, 404 U.S. 940, 92 S.Ct. 280, 30 L. Ed.2d 253 (1972). Here the defense is available to Landau. Ritchie was provided a fair opportunity to litigate his entire bonus claim in the arbitration proceeding, he did so, the award of the arbitrators reduced the amount he sought but gave him a recovery, the award was confirmed by the Supreme Court of New York on November 23, 1971, and the award has been paid in full. More than this the judicial process is not required to provide to disappointed claimants. In a similar situation to the present one we have held that one not a named party to an arbitration proceeding can successfully rely in defense of a court action upon the collateral estoppel doctrine when the party suing him had been given a full opportunity to litigate the issue in the prior arbitration proceeding. Goldstein v. Doft, 236 F. Supp. 730 (SDNY 1964), aff'd 353 F.2d 484 (2 Cir. 1965), cert. denied, 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302

2. One who, though not a party of record, controls in furtherance of his own self interest the conduct of adjudicatory proceedings by or against another is bound by the result of the proceeding. See Developments in the Law of Res Judicata, 65 Harv.L.Rev. 818, 856. Although Landau, a 43% stockholder and chief operating officer of Halcon, was not a named party to the arbitration proceeding he clearly participated as an active "non party." He testified at length on behalf of Halcon and, as president of Halcon, he effectively controlled the development of Halcon's litigation. Moreover, as a substantial stockholder of Halcon, codefendant with it, and potential joint obligor on the alleged promise to Ritchie, he was obviously participating in the arbitration proceedings in order to protect his own self interest. Although ordinarily a stockholder is not bound by determinations made against his corporation, in the circumstances of this case Landau would probably be bound by the award against it. See Souffront v. Campagnie des Suereries, 217 U.S. 475, 486–487, 30 S.Ct. 608, 54

L.Ed. 846 (1910); Minneapolis-Honeywell Regulator Co. v. Thermoco, Inc., 116 F.2d 845 (2 Cir. 1941); Cohen v. Lewis, 31 Misc.2d 689, 221 N.Y.S.2d 884 (1961); Horn v. Bennett, 253 A.D. 630, 3 N.Y.S. 2d 525 (1938). Essentially, the doctrine of collateral estoppel is a rule of justice and fairness, and we can ascertain no ground for holding that Landau would not be bound if the situation were reversed and Ritchie were raising the collateral estoppel defense against him. Commissioners of the State Insurance Fund v. Low, 3 N.Y.2d 590, 595, 170 N.Y.S.2d 795, 798, 148 N.E.2d 136 (1958).

3. The fact that the arbitration forum is not plaintiff's forum is irrelevant under the New York test so long as the conduct of the proceeding before the arbitrators was fair. See B. R. DeWitt, Inc. v. Hall, 19 N.Y. 2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967). There has been no allegation that the conduct of the arbitration proceeding in this case was unfair to the plaintiff.

(1966); [4] see Israel v. Wood Dolson Co., 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E. 2d 97 (1956). Although plaintiff attempts to distinguish Goldstein v. Doft, *supra*, on the ground that plaintiff Goldstein "lost" in the arbitration proceedings, while plaintiff Ritchie "won," this attempted distinction is clearly without merit. The critical fact in both cases is that the plaintiffs were given one opportunity to litigate their claims for compensation before the arbitrators; and one opportunity is all they are entitled to have. See Cohen v. Dana, Sup., 83 N.Y.S.2d 414 (1948), aff'd, 300 N.Y. 608, 90 N.E.2d 65 (1949).

Plaintiff also contends that, irrespective of a disposal adverse to him of his contract and quantum meruit claims against Landau, his newly raised fraud cause of action should not summarily be dismissed because the fraud claim had not been raised in the arbitration proceeding. Aside from the question of whether plaintiff has waived his right to raise this at this late stage,[5] we conclude that the court should not now entertain the issue. Although fraudulent inducement to enter into a contract is actionable in tort in New York State and can be raised in addition to any claims for compensatory damages arising from the breach of the contract, (see, e. g., Sabo v. Delman, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957); Werblud v. Mehadrin Dairy Corporation, 11 Misc.2d 167, 169 N.Y.S. 2d 465 (1957)), the plaintiff must be able to show actual damages resulting from the fraud which are distinguishable from the damages which he has already recovered in a prior adjudicatory proceeding. Even assuming plaintiff could prove that Landau made a promise of a bonus which Landau never intended to perform and thereby fraudulently induced plaintiff to execute the second two-year employment contract, the $200,000 recovery would estop any claim for compensatory damages, since the making of the promise was as deliberately denied by Halcon as it was by Landau.

In this additional post-arbitration cause of action which Ritchie has pleaded he seeks to recover "$99,000, representing attorneys' fees, travel and litigation expenses and lost time." He also alleges that "In addition, exemplary damages should be assessed against defendant in the amount of $500,000."

Our above disposition of this belatedly pleaded cause of action disposes as well of these claims for special damages for they, if recoverable at all, would only be recoverable if there were no valid defense to the cause of action itself.

Affirmed.

---

4. *Goldstein* was decided prior to the more recent formulations of the New York rule in B. R. DeWitt, Inc. v. Hall, supra, and Schwartz v. Public Adm. of County of Bronx, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969). Insofar as these decisions relax the need for strict mutuality they clearly strengthen the decisional doctrine of Goldstein v. Doft.

5. It can be strongly argued that plaintiff had an obligation in these circumstances to consolidate into a single proceeding all of his causes of action and to raise in one complaint all the claims which he could reasonably foresee could arise out of the same transaction. Armstrong v. White Plains Council of Girl Scouts, 30 A.D. 2d 818, 292 N.Y.S.2d 813, aff'd, 24 N.Y.2d 748, 299 N.Y.S.2d 846, 247 N.E.2d 662 (1968). Courts should not permit the splitting of causes of action when the result of doing so could result in vexatious litigation for the defendant and an undue clogging of the dockets of the court. Plaintiff's excuse here that he could not have raised the late-pleaded fraud claim earlier is not persuasive. He states he was not aware of the possibility of fraud until he heard Landau testify before the arbitrators that he never promised a bonus to Ritchie. Surely, when he commenced his action, begun before any testimony was taken in the arbitration proceedings, Ritchie knew or had reason to know that a defense that no bonus arrangement was ever made or was ever planned to be paid would likely be raised.