Mike OLDHAM, Charles J. Oldham and Rona Oldham, Appellants,

v.

Margaret Ann PRITCHETT, Appellee.

No. 78–1312.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1978.

Decided May 29, 1979.

---

David F. Sullivan of Prewitt, Jones & Karchmer, Springfield, Mo., argued for appellants; James K. Prewitt, Springfield, Mo., on brief.

Ronald Lynn Myers of Daniel, Clampett, Rittershouse, Dalton & Chaney, Springfield, Mo. (argued), and Richard Paul Wacker, Springfield, Mo., on brief, for appellee.

Before LAY and HEANEY, Circuit Judges, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

█ This is an appeal by Mike, Charles J., and Rona Oldham from summary judgment on their civil action for damages arising under admiralty law. Essentially, appellee Margaret Ann Pritchett contended that the Oldhams were barred on the grounds of res judicata or collateral estoppel from relitigating the issues of Pritchett's negligence and the Oldhams' damages. Both of these issues, Pritchett argued, were finally adjudicated in a prior exoneration from or limitation of liability admiralty proceeding, 46 U.S.C. §§ 183–89, Rule F, Supplemental Rules, F.R.Civ.P., in which the Oldhams and Pritchett were co-party claimants. We note preliminarily that since the Oldhams' suit is upon a different cause of action than the cause brought before the court in the limitation proceeding, Pritchett's motion appropriately falls under the rubric of collateral estoppel,[1] *Parklane Hosiery Co., Inc. v. Shore,* —— U.S. ——, 99 S.Ct. 645, 649 n.5, 58 L.Ed.2d 552 (1979); 1B Moore's Federal Practice ¶ 0.405[1] at 822–24 (2d ed. 1974), and hence is a proper subject for summary judgment adjudication as an affirmative defense. *Caplan v. Roberts,* 506 F.2d 1039, 1042 (9th Cir. 1974). District Judge Collinson of the Western District of Missouri presided in both actions.

█ On appeal, the dispositive issue is whether the district court was correct in holding that the Oldhams were barred from relitigating the issue of Pritchett's negligence on the basis of the finding in the prior limitation action that Pritchett was

---

* The Honorable William C. Hanson, Senior United States District Judge, Southern District of Iowa, sitting by designation.

1. Res judicata, or "claim preclusion," necessitates an identity of causes of action in both suits. *See* 1B Moore's Federal Practice, ¶ 0.410[1] at 1153; ¶ 0.441[1] at 3771. On the other hand, collateral estoppel, or "issue preclusion," requires only that some question or fact be adjudicated in a final judgment between the same parties or their privies. *See* 1B Moore's Federal Practice ¶ 0.441[2] at 3777; Vestal, *Preclusion/Res Judicata Variables: Parties,* 50 Iowa L.Rev. 27, 27–28 (1950).

not negligent as a matter of law.[2] Pertinent to the review we note that Pritchett bears the burden to show that the Oldhams are collaterally estopped on the issue of Pritchett's negligence by a prior adjudication, such that no genuine issue of material fact exists between the parties. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 457 (5th Cir. 1971), *cert. denied sub nom., City Trade & Industries, Ltd. v. Allahabad Bank, Ltd.*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971).

## I.

■ On August 7, 1971, a motorboat operated by Margaret Ann Pritchett and owned by her parents collided with a motorboat operated by Scott Clifton on Table Rock Lake in Missouri. Clifton had borrowed the boat from Kimberling Cove, Inc. (Kimberling), which operated a marina on the lake, and for whom he was employed as a dockhand. The boat was owned by Recreation Unlimited (Recreation), now Dando Enterprises, Inc., which had furnished the boat under contract to Kimberling for rental purposes. Pritchett and Mike Oldham, a passenger in the Pritchett boat, sustained personal injuries as a result of the accident. Thereafter, three lawsuits were filed in the United States District Court for the Western District of Missouri. Pritchett and her parents filed separate suits against the same defendants: Clifton, Kimberling, Recreation, and Charles J. Dando, the president of both corporations (Clifton was dismissed as a defendant before trial). The third action was brought by Recreation as a petition in admiralty for an exoneration from or limitation or liability.[3] Recreation joined the Oldhams, Pritchett and her parents as co-claimants in the proceeding, and alleged contributory or comparative negligence on the part of Margaret Pritchett in the operation of her boat. Mike Oldham and his parents, and Pritchett and her parents, each filed an answer and claim for damages against Recreation. No cross claims were filed between the Oldhams and Pritchett and her parents. Nor did the Oldhams file a complaint or complaints for consolidation with the Pritchetts' actions. The action proceeded to trial and Mike Oldham gave testimony regarding the operation of the Pritchett boat prior to the collision. In a memorandum opinion dated August 19, 1976, the district court found, *inter alia*, that as a matter of law there was no negligence or fault in the operation of the Pritchett boat. The court thereafter entered judgment against Kimberling on September 16, 1976, granting Margaret Pritchett damages of $400,000 and awarding her parents medical expenses totalling $25,-783.34 in addition to the value of their boat, $2900. Mike Oldham's damages were adjudicated at $10,000, while his parents, Charles J. and Rona Oldham, were awarded $3675 for his medical expenses. The district court further held that Recreation's liability was limited to the value of its boat, and this amount was divided among the Oldhams and the Pritchetts. This Court affirmed on appeal all portions of the district court's judgment, save the court's determination that Recreation was entitled to a limitation of liability. *Pritchett v. Kimberling Cove, Inc.*, 568 F.2d 570 (8th Cir.

2. The Oldhams also appeal from that portion of the district court's judgment barring them from relitigating the amount of the damages awarded by the court in the limitation action. Because we hold that the district court properly applied the doctrine of collateral estoppel to the Oldhams' claim of Pritchett's negligence, we do not separately treat the damages issue. It follows from our analysis, however, that if the Oldhams are estopped from relitigating Pritchett's negligence, so are they estopped from relitigating damages.

3. Under 46 U.S.C. § 183, the liability of the owner of a vessel "for any loss, damage, or injury by collision . . . incurred, without the privity or knowledge" of the owner, shall not exceed the value of the owner's interest in the vessel and its freight. The issues to be determined by the admiralty court are whether the ship or its owners are liable at all and if so, whether the ship and its owners are entitled to a limitation of liability. *Hartford Accident & Indemnity Co. v. Southern Pacific Co.*, 273 U.S. 207, 215, 47 S.Ct. 357, 71 L.Ed. 612 (1927); *Providence & N. Y. S. S. Co. v. Hill Mfg. Co.*, 109 U.S. 578, 595, 3 S.Ct. 379, 27 L.Ed. 1038 (1883).

1977). We left undisturbed the district court's finding that there was no negligence in the operation of the Pritchett boat. *Id.* at 574.

After the completion of the trial but before the entry of the district court's memorandum findings, the Oldhams filed the present action against Margaret Ann Pritchett, Kimberling, Charles J. Dando, individually and Charles J. Dando, Dorothy L. Dando, and Coralfe Patrick, as statutory trustees of Dando Enterprises, Inc. (Recreation's successor). The Oldhams alleged, *inter alia,* that the August 7 accident was caused by the negligent operation of the Pritchett boat and claimed damages of $75,-000 for Mike Oldham and $25,000 for his parents. Thereupon, the district court granted Pritchett's motion for summary judgment. The Oldhams have seasonably appealed.

## II.

■ As a branch of the doctrine of res judicata, collateral estoppel serves both judicial and private interests in the termination of litigation. In the context of the judicial system, collateral estoppel principles serve primarily to conserve time and resources; at the same time, the application of collateral estoppel is a means by which a litigant may evade unnecessary expenses and potential harassment by lawsuit, and avoid conflicting rights and duties arising from inconsistent judgments. *Johnson v. United States,* 576 F.2d 606, 609–10 (5th Cir. 1978); *Southwest Airlines Co. v. Texas International Airlines,* 546 F.2d 84, 94 (5th Cir. 1977); *Bruszewski v. United States,* 181 F.2d 419, 421 (3d Cir. 1950), *cert. denied,* 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950).

■ Traditionally, courts have required "mutuality" between parties as a condition to the application of collateral estoppel. 1B Moore's Federal Practice ¶ 0.412[1] at 1803–04. The doctrine of "mutuality" requires that "the party invoking the judgment must similarly be bound to it either as party or as a privy." 1B Moore's Federal Practice ¶ 0.441[3] at 3781. The more recent trend, however, has been to eliminate strict "mu-

tuality" as a condition to the application of collateral estoppel. *Montana v. United States,* —— U.S. ——, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979); *Cramer v. General Tel. & Electronics Corp.,* 582 F.2d 259, 267–68 (3d Cir. 1978); *Johnson v. United States,* 576 F.2d 606, 614 (2d Cir. 1978); *Speaker Sortation Systems, Division of A–T–O, Inc. v. United States Postal Service,* 568 F.2d 46, 48–49 (7th Cir. 1978); *accord, Griffin v. Burns,* 570 F.2d 1065, 1072 (1st Cir. 1978); *Windham v. American Brands, Inc.,* 565 F.2d 59, 69 n.30 (4th Cir. 1977); *Clarke v. Watchie,* 513 F.2d 994, 998 n.6 (9th Cir. 1975); *see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 324–327, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1970); Restatement (Second) Judgments, Appendix § 88, Comment *b* at 162–63 (Tent. Draft No. 3, 1976); *see also* Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine,* 9 Stan.L.Rev. 981 (1957). This shift toward a more functional approach to the application of collateral estoppel has similarly resulted in the demise of the companion rule to "mutuality," the requirement of strict "adversity" between parties. *Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840 at 845 (3rd Cir.) 1B Moore's Federal Practice, ¶ 0.411[2] at 1314. Since Justice Traynor's seminal opinion in *Bernhard v. Bank of America Nat. Trust & Savings Assn.,* 19 Cal.2d 807, 122 P.2d 892 (1942), many jurisdictions permit nonparties to prior actions to rely on the judgment as a defense to a subsequent action brought by a party to the prior litigation. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1970); Note, *Collateral Estoppel of Non-Parties,* 87 Harv.L.Rev. 1485 (1974). If a stranger to the prior litigation may invoke estoppel as a defense, then *a fortiori* a co-party in the prior action ought to be able to preclude a former co-party from relitigating issues finally adjudicated in the prior lawsuit. *Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d at 845.

■ In *Gerrard v. Larsen,* 517 F.2d 1127, 1131–32 (8th Cir. 1975), this Court

recognized the general erosion of strict "mutuality" between parties as a requisite to the application of collateral estoppel in its defensive context.[4] *See Garrigan v. Giese,* 553 F.2d 35, 36–37 n.2 (8th Cir.). The *Gerrard* court, in discussing whether federal or state law should be applied in determining the collateral estoppel effect of an issue adjudicated in a prior diversity action, found it unnecessary to resolve the issue because the defensive assertion of collateral estoppel could have been accomplished under either body of law.[5] *Id.* at 1132. The *Gerrard* court proceeded on the basis that estoppel was appropriate where: (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Gerrard v. Larsen,* 517 F.2d at 1130; *see Parklane Hosiery Co. v. Shore,* 99 S.Ct. at 652; *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. at 328, 91 S.Ct. 1434. We believe that this analysis may appropriately be applied to the circumstances of the present case. The Court's adoption of the *Gerrard* four-part test for the application of collateral estoppel additionally forecloses the issue of whether the Oldhams and Pritchett were "adverse" as co-parties in the proceeding. We agree with the reasoning of the Third Circuit that "[the] nullification of the mutuality requirement renders non-adversity irrelevant to

the doctrine of collateral estoppel." *Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d at 845.

■ Only the fourth element set forth in *Gerrard* is at issue in this case. Thus, the relevant inquiry is not with the existence of formal "mutuality" or "adversity," but whether, given the particular circumstances, there was a full and fair opportunity to be heard on the issue adjudicated in the prior action. In the context of the immediate case, the meaning of "full and fair opportunity" is dependent on whether the Oldhams were denied procedural, substantive, or evidentiary opportunities to be heard on the issue of Pritchett's negligence in the limitation action. *See Blonder-Tongue Laboratories v. University of Illinois Foundation,* 402 U.S. at 333, 91 S.Ct. 1434; *Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d at 845; *Eisel v. Columbia Packing Co.,* 181 F.Supp. 298, 301 (D.C. Mass.1960). Because the doctrine of collateral estoppel is not rigidly applied, the focus is on whether the application of collateral estoppel will work an injustice on the party against whom estoppel is urged. *Tipler v. E. I. duPont deNemours and Co., Inc.,* 443 F.2d 125, 128 (6th Cir. 1971); 1B Moore's Federal Practice ¶ 0.405[12] at 791.

It is clear that the Oldhams would not have received any additional procedural opportunities in the second action unavailable to them in the limitation action, had their cause proceeded to trial. We note the na-

**4.** The United States Supreme Court in *Parklane Hosiery Co. v. Shore,* 99 S.Ct. at 649 n.4 succinctly summarized the terms "offensive" and "defensive" collateral estoppel:

. . . [O]ffensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant.

*See* 1B Moore's Federal Practice, ¶ 0.412[1] at 1807.

**5.** Traditionally, courts have been less willing to permit a plaintiff to assert estoppel offensively to impose liability in a second action against a

defendant who was a party to the first action and had the facts determined adversely to him. *But see United Air Lines v. Wiener,* 335 F.2d 379 (9th Cir. 1964); *Zdanok v. Glidden Company, Durkee Famous Foods Division,* 327 F.2d 944 (2d Cir. 1964), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Teitelbaum Furs, Inc. v. Dominion Insurance Co.,* 56 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439 (1962). For a discussion of the offensive employment of estoppel, *see* Currie, *Civil Procedure; The Tempest Brews,* 53 Calif.L.Rev. 25, 28–37 (1965); Weinstein, *Revision of Procedure: Some Problems in Class Actions,* 9 Buffalo L.Rev. 433, 448–454 (1960); and Note, *The Impacts of Defensive and Offensive Assertion of Collateral Estoppel by a Nonparty,* 35 Geo.Wash.L.Rev. 1010 (1967).

ture of the limitation action. Limitation of liability is not unlike civil interpleader to the extent that both actions usually involve a number of claimants seeking enjoyment of a res possessed by the petitioner. And, similarly to interpleader, it is well-settled that a co-party claimant in a limitation action has the right to cross-claim against other co-claimants to the res. *British Transportation Commission v. United States,* 354 U.S. 129, 77 S.Ct. 1103, 1 L.Ed.2d 1234 (1956).[6] *See* Rule 13(g), F.R. Civ.P.; Rule A, Supplemental Rules, F.R. Civ.P. Moreover, no procedural impediment prevented the Oldhams from filing a complaint or complaints against Pritchett and the other defendants for consolidation with the claims adjudicated in the first proceeding. Thus, since the Oldhams were not restricted either from cross-claiming against Pritchett in the limitation proceeding or asserting a separate action for consolidation with the others, no procedural barriers existed which prevented the Oldhams from raising Pritchett's negligence in the earlier trial.

Similarly, the Oldhams were not restricted substantively or evidentially in the limitation action. Appellant Mike Oldham testified that the Pritchett boat was cruising at a safe speed and had its lights on prior to its collision with the Clifton boat. His testimony obviously underscored the district court's finding of non-negligence on the part of Pritchett. The Oldhams had practical reason, however, to offer evidence of Pritchett's comparative or contributory negligence alleged by Recreation. As this Court recently observed with regard to co-claimants in an admiralty limitation action: "claimants have an interest not only in enhancing their own claims, but also in minimizing the claims of others" because they seek a share of the same res. *In re Complaint of Universal Towing Co.,* 595 F.2d 414 (8th Cir. 1979). *See Bryant v. Partenreederei-Ernest Russ,* 352 F.2d 614, 615 (4th Cir. 1965); Rule F(8), Supplemental Rules, F.R.Civ.P. Despite the motivation and opportunity to do so, the Oldhams failed to exercise their right to introduce evidence relating to Pritchett's alleged comparative or contributory negligence.[7] This tactical decision by the Oldhams not to participate as "laboring oars" in the limitation action does not, under such circumstances, foreclose the application of collateral estoppel. *Cf. Partmar Corp. v. Paramount Corp.,* 347 U.S. 89, 100–01, 74 S.Ct. 414, 98 L.Ed. 532 (1954); *Mayer v. Distel Tool and Machine Co.,* 556 F.2d 798 (6th Cir. 1977).

We therefore conclude, as did the district court, that the Oldhams enjoyed a full and fair opportunity to be heard on the issue of Pritchett's negligence in the limitation proceeding. They are thus collaterally estopped by the finding of Pritchett's non-negligence. This result is consistent with and supportive of the policy underlying the doctrine of estoppel recently articulated by the Supreme Court:

> "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their ad-

---

**6.** The *British Transportation* court, 354 U.S. at 138, 77 S.Ct. at 1107, held that the right to cross-claim was available since:

> [l]ogic and efficient judicial administration require that recovery against all parties at fault is as necessary to the claimants as is the fund which limited the liability of the initial petitioner. Otherwise this proceeding is but a "water haul" for the claimants, a result completely out of character in admiralty practice.

**7.** The amount of the res in dispute has been assigned some weight as a factor weighing against the application of collateral estoppel principles by certain courts. *See James Talcott, Inc. v. Allahabad Bank, Ltd.,* 444 F.2d at 461; *Brightheart v. McKay,* 136 U.S.App.D.C.

400, 403 n.4, 420 F.2d 242, 245 n.4 (1969). However, the amount involved is not determinative.

We recognize that, as a practical matter, co-claimants to a limitation action may in fact devote their efforts to the question of whether liability should be limited, rather than focusing on the respective rights of each claimant to a share of the res. The question nevertheless remains whether the Oldhams had a full and fair opportunity to be heard on the issues of negligence and damages. Once the issues were introduced into the limitation action, the pertinent inquiry is whether the Oldhams were restricted from contesting those issues during the proceeding.

versaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." (Footnote omitted.)

*Montana v. United States,* 99 S.Ct. at 974. See Vestal, *Preclusion/Res Judicata Variables: Adjudicating Bodies,* 54 Georgetown L.J. 857, 858 (1966). Furthermore, the application of estoppel in this instance fosters the purpose of maritime limitation of liability proceedings discussed by Chief Justice Taft in *Hartford Accident & Indemnity Co. v. Southern Pacific Co.,* 273 U.S. 207, 216, 47 S.Ct. 357, 359, 71 L.Ed. 612 (1927): "[A limitation of liability proceeding] looks to a complete and just disposition of a many cornered controversy . . . ." *See British Transportation Commission v. United States,* 354 U.S. at 137, 77 S.Ct. 1103.

▇ Our conclusion is reinforced by the fact that Judge Collinson presided over both actions in the court below. Having presided over the course of the first trial, Judge Collinson's determination of its collateral estoppel effect vis-a-vis the Oldhams' claims is predicated on more than a cold record and accordingly is entitled to great weight. Judge Collinson was in a particularly good position to determine what was actually litigated in the limitation proceeding, and whether the Oldhams had a full and fair opportunity to assert Pritchett's negligence.[8] Therefore, we refer to the district court's remarks in his order granting summary judgment:

> The issues between Mike Oldham, his parents and Margaret Pritchett in the instant case are whether Margaret Pritchett was negligent in the operation of the motorboat and the extent of damages suffered by the plaintiffs. *Both of these issues were raised in the prior litigation and were vigorously contested in those proceedings.* The issues were judicially determined and the prior judgment was dependent on the Court's findings on those issues. (Emphasis added.)

For the foregoing reasons, we affirm the judgment of the district court.

---

8. We additionally note that this is not the type of situation where employment of collateral estoppel would result in unfairness because a party was forced to litigate in an inconvenient forum, with full-scale discovery or the calling of witnesses prohibited as a practical matter. *See Blonder-Tongue Laboratories v. University of Illinois Foundation,* 402 U.S. at 332–33, 91 S.Ct. 1434; *see also James Talcott, Inc. v. Allahabad Bank Ltd.,* 444 F.2d at 561–62; *Berner v. British Commonwealth Pacific Airlines, Ltd.,* 346 F.2d 532, 540 (2nd Cir. 1965), *cert. denied,* 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966).