**Jay JEFFERS, Plaintiff,**

v.

**CONVOY COMPANY, an Oregon corporation, C. Dennis McCorkle, individually, and Edward Vaughn, individually, Defendants.**

Civ. No. 4–85–1574.

United States District Court,
D. Minnesota,
Fourth Division.

June 3, 1986.

James H. Kaster, Minneapolis, Minn., for plaintiff.

Robert E. Cattanach, and Michael J. Vanselow, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for defendants.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Jay Jeffers originally brought this action in Ramsey County District Court against Convoy Company (Convoy), C. Dennis McCorkle, and Edward Vaughn, alleging defamation, violations of *Minn. Stat.* §§ 181.75 and 181.76, breach of contract, negligent and intentional infliction of emotional distress, fraud and misrepresentation, and breach of an implied covenant of good faith and fair dealing. The action was subsequently removed to this court pursuant to 28 U.S.C. § 1441. The matter is now before the court upon defendants' motion for dismissal, or alternatively, for summary judgment on all counts except for part of Count II.

### I. Background

The facts pertinent to this motion have been taken from each side's submissions. For purposes of this motion, the court will accept plaintiff's version where the two accounts diverge. Plaintiff is a former employee of Convoy. Defendants C. Dennis McCorkle and Edward Vaughn were Jeffers' supervisors at Convoy. Convoy is in the trucking business. Beginning in November 1982, Jeffers was hired by Convoy to load, transport, and unload motor vehicles. Prior to that time, he worked for Kenosha Auto Transport Corporation for approximately seven years.

On December 10, 1983, a security guard observed Jeffers taking or attempting to take, gasoline from a tank on one of Convoy's service vehicles. The guard reported this incident to Convoy. Jeffers admits attempting to get gas, but states that he was trying to refuel a work-related vehicle which was about to be transported.

On December 19, 1983, defendants Vaughn and McCorkle confronted Jeffers with the observations of the security guard. Jeffers states Vaughn and McCorkle gave him three options: he could resign, he could be fired and file a grievance, or he could submit to a polygraph and be reinstated immediately if it indicated his story was truthful. Defendants state they fired Jeffers when he did not offer a satisfactory explanation for his conduct. They also state that union representatives subsequently advised Convoy that Jeffers wanted to take a polygraph test to clear himself.

Convoy made arrangements for Jeffers to appear at the offices of Minneapolis polygrapher James I. Gibson. Jeffers declined to take the test during his initial appointment because he was concerned about the scope of the test questions. He states that many of the questions related to whether he knew who among his fellow

employees was stealing gas. Defendants state that plaintiff told Gibson that he had done everything the security guard said but that he had not actually taken any gas because the tank on the vehicle was empty.

Gibson called Jeffers requesting a continuance of the earlier examination, apparently after having spoken with the individual defendants. Defendants maintain that during this second visit Jeffers stated that he had only pumped gas in one of the vehicles he was attempting to load onto his truck. Plaintiff took the polygraph test, but the results of the test were inconclusive. Jeffers was not reinstated.

Jeffers then asserted a grievance pursuant to the collective bargaining agreement. Following an arbitration hearing on January 5, 1984, in which the Wisconsin Joint Auto Transport Committee received some testimony and exhibits, the committee denied the grievance and upheld the discharge.

Jeffers asserts that past events show that Convoy was out to get him. In July of 1983 he was fired for allegedly damaging a Datsun 626. An arbitration committee subsequently reinstated Jeffers with backpay. Jeffers notes that he was a Kenosha Auto Transport (KAT) employee that Convoy reluctantly agreed to maintain after KAT lost its auto transport contract to Convoy. He asserts that McCorkle wrote a letter or memo stating "as soon as we (Convoy) get rid of the KAT employees this will be a better place." Defendants have denied the existence of any such communication.

After Jeffers was discharged from Convoy he applied for unemployment benefits. Convoy denied eligibility and informed the Department of Economic Security that Jeffers was fired for theft and had refused to take a polygraph test. Jeffers states that Convoy also informed a prospective employer, McKeown Transport, that Jeffers was fired for cause.

Jeffers states that he has suffered serious mental distress and has been unable to keep his job at McKeown Transport because of clinical depression.

## II. Discussion

### A. Count I: Defamation

Convoy raises the defense of collateral estoppel to the defamation claim, contending that the grievance committee has already determined that it had just cause to terminate plaintiff. It argues that summary judgment on Count I is thus justified.

Collateral estoppel is appropriate only where: "1) the issue [is] identical to one in a prior adjudication; 2) there was a final judgment on the merits; 3) the estopped party was a party or in privity with a party to the prior adjudication; and 4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue."[1] *Oldham v. Pritchett,* 599 F.2d 274, 279 (8th Cir.1979), *citing Gerrard v. Larsen,* 517 F.2d 1127, 1130 (8th Cir.1975). If these conditions are met, collateral estoppel may be applied to arbitration decisions. *See Ritchie v. Landau,* 475 F.2d 151 (2d Cir.1973); *Maidman v. O'Brien,* 473 F.Supp. 25 (S.D.N.Y.1979). Because the doctrine of collateral estoppel is flexibly applied, the focus is on whether its application would work an injustice on the party against whom estoppel is urged. *Oldham* at 279; *Tipler v. E.I. DuPont de Nemours and Co., Inc.,* 443 F.2d 125, 128 (6th Cir.1971). Further, upon this motion for summary judgment, the court is required to view the facts in a light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from the underlying facts.

Plaintiff asserts that application of collateral estoppel is inappropriate because he lacked a full and fair opportunity to be heard at the prior arbitration hearing. Whether plaintiff had a full and fair oppor-

---

1. The court need not determine whether state or federal law governs the estoppel effect in this removal action because the federal and state standards are essentially the same. *Compare*

*Oldham v. Pritchett,* 599 F.2d 274 (8th Cir.1979), *with Lustik v. Rankila,* 269 Minn. 515, 131 N.W.2d 741 (Minn.1964).

tunity to be heard depends on whether he was denied procedural, substantive, or evidentiary opportunities at the prior arbitration hearing. *See Oldham v. Pritchett,* 599 F.2d 274 (8th Cir.1979).

The record shows that plaintiff's case was one of eleven cases heard by the Wisconsin Joint Auto Transport Committee that day. Plaintiff was not present at the hearing nor was he represented by counsel. These circumstances distinguish the case from one which defendants heavily rely, *Ritchie v. Landau,* 475 F.2d 151 (2d Cir. 1973). In *Ritchie,* the court affirmed a finding that plaintiff Ritchie was estopped from reasserting claims that had been reduced to judgment in a prior arbitration proceeding. In finding that Ritchie had had a full and fair opportunity to litigate in the arbitration proceeding, the court noted that three days of "detailed proceedings" had taken place. *Id.* at 153. It also noted that Ritchie had "testified extensively" on his own behalf and had cross-examined the defendant and other hostile witnesses. *Id.* at 154.

Moreover, in the instant case, plaintiff had been urged to step outside the established grievance procedure by the company when it offered the polygraph alternative. Thus, plaintiff may not have had the motivation to pursue vigorously the grievance and arbitration procedures.

Finally, the record shows that plaintiff's polygraph test was presented at the arbitration hearing. Minnesota courts have recognized the unreliability of polygraph tests and refuse to allow the results of such tests as competent evidence. *See State by Spannus v. Century Camera, Inc.,* 309 N.W.2d 735, 743 (Minn.1981). Defendants contend that receiving the polygraph test into evidence was harmless error at best, but the court is unpersuaded. Granting collateral estoppel effect to a decision which is partly based on evidence from a polygraph test allows the party presenting the evidence to avoid an evidentiary rule of the Minnesota courts.

■ For these reasons, the court finds that defendants have not shown as a mat-

ter of law that plaintiff had a full and fair opportunity to litigate the question at hand at the prior arbitration proceeding. Thus, summary judgment is not appropriate on Count I.

Defendants also argue, however, that individual defendants McCorkle and Vaughn are entitled to summary judgment because they did make any defamatory statements about plaintiff. The individual defendants have submitted affidavits which state that they had no communication with McKeown or any other of plaintiff's prospective employers regarding his employment with Convoy. *See* aff. of C. Dennis McCorkle at ¶ 5; aff. of Ed Vaughn at ¶ 5. Neither of them wrote the letter by which Convoy informed McKeown that plaintiff was fired for cause.

■ Plaintiff has failed to counter this argument in any way. Under Fed.R.Civ.P. 56(e), plaintiff may not merely rest upon his pleadings, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *See One Blue 1977 AMC Jeep CJ–5 v. United States,* 783 F.2d 759, 762 (8th Cir.1986); *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981). Summary judgment is therefore appropriate in favor of individual defendants McCorkle and Vaughn on Count I of the complaint. The claims against Convoy in Count I still remain in the case.

### B. Count II: Violations of Minnesota Statutes §§ 181.75 and 181.76

Defendants request that the court dismiss the part of Count II which seeks to impose liability for violations of *Minn.Stat.* § 181.76. They contend that plaintiff has failed to state a claim upon which relief can be granted because there is no private right of action for violations of § 181.76. Plaintiff asserts, by contrast, that § 181.76 is *in pari materia* with *Minn.Stat.* § 181.-75, which does provide for a civil cause of action. He argues that the remedy provisions of the former section should therefore apply to the latter as well.

A criminal statute gives rise to a civil cause of action only if it appears by express terms or by clear implication to have been the legislative intent. *See, e.g., Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421 (Iowa 1977); 1 Am.Jur.2d *Actions* § 57 at 589 (2d ed. 1962). The express terms of *Minn.Stat.* § 181.76 do not provide for a private cause of action; rather, the section unambiguously states:

> No person shall disclose that another person has taken a polygraph or any test purporting to test honesty or the results of that test except to the individual tested. If such a test is given after August 1, 1973 and at the employee's request, the results may be given only to persons authorized by the employer to receive the results. A person who violates this section is guilty of a misdemeanor.

Where the language of a statute is free from ambiguity, no construction is necessary or permitted. *Lenz v. Coon Creek Watershed District*, 278 Minn. 1, 153 N.W.2d 209 (Minn.1967).

Plaintiff argues nevertheless that the rule of *in pari materia* should apply since the general subject matter and the purpose of *Minn.Stat.* § 181.75 and 181.76 [2] are the same. It appears, however, that the purpose of the doctrine of *in pari materia* is to aid the court in ascertaining legislative intent only when it is in doubt. *See Board of Education v. Sand*, 227 Minn. 202, 34 N.W.2d 689, 694 (1948). Generally, "no reliance can be placed [on] other statutes, except by express reference, to interpret a statute that is clear and free from ambiguity." *City of St. Louis Park v. King*, 246 Minn. 422, 75 N.W.2d 487 (1956). As noted above, the language of § 181.76 is clear.

Furthermore, the legislative history indicates that the legislature decided against providing a private cause of action for *Minn.Stat.* § 181.76. *Minn.Stat.* §§ 181.75 and 181.76 were originally enacted in 1973. Laws 1973, C. 667, §§ 1, 2. In 1976, the Legislature amended § 181.75 to provide a private right of action, but did not choose to amend § 181.76 at that time. The amendment shows that the Legislature knew how to provide a private right of action for polygraph statute violations where it wished to do so. If the Legislature thought that the misdemeanor penalty under § 181.76 was ineffective to accomplish its desired purpose, it could have, and presumably would have, expressly provided a private right of action under that statute.[3]

Because the legislative intent clearly emerges from the express language of the statute and from the legislative history, it appears that the doctrine of *in pari materia* is inapplicable.[4] The court therefore concludes as a matter of law that no private cause of action exists under *Minn.*

2. *Minn.Stat.* § 181.75 states in pertinent part: Subdivision 1. Prohibition, penalty. No employer or agent thereof shall directly or indirectly solicit or require a polygraph, voice stress analysis, or any test purporting to test the honesty of any employee or prospective employee.... Subdivision 4. Individual remedies. In addition to the remedies otherwise provided by law, any person injured by a violation of this section may bring a civil action to recover any and all damages recoverable at law, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court....

3. It is unlikely that the Legislature simply overlooked § 181.76 when it amended § 181.75. In the Law amending § 181.75, the Legislature also repealed former § 181.77 which concerned the use of polygraphs by the police in investigations. There is no reason to believe that the Legislature could have "overlooked" § 181.75 when it amended the statute immediately preceding that section and repealed the statute immediately following it. Moreover, § 181.76 protects the reputation interests of those who have taken polygraph tests. It is reasonable to presume that the Legislature decided that the latter interest is adequately protected by the law of defamation.

4. Even if the court applied the doctrine to these statutes, any inconsistencies must be resolved so as to effectuate best the legislative intent. *Allen v. Holm*, 243 Minn. 96, 66 N.W.2d 610 (1954). As discussed above, the express language and legislative history indicates that the legislature intended only to provide a private right of action for *Minn.Stat.* § 181.75.

*Stat.* § 181.76 and that plaintiff's claims under this section must be dismissed. Those claims in Count II which state a claim under *Minn.Stat.* § 181.75 are unaffected by this ruling.

## C. Count III: Breach of Contract

Defendants contend that they are entitled to summary judgment on Count III because the claims are barred by the six month statute of limitations applicable to breaches of collective bargaining agreements under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. This issue may be dealt with summarily, for plaintiff concedes that the breach of contract claim is not viable. Summary judgment on count III is therefore appropriate.

Pursuant to Fed.R.Civ.P. 11 and *Minn. Stat.* § 549.21, defendants seek their costs and attorney's fees in bringing their motion as to Count III. They argue that plaintiff's refusal to dismiss Count III after being informed that the claim was untimely was unjustified. They further argue that plaintiff's belief that other documents established a contract ignores well established principles that a collective bargaining agreement is exclusive and preempts any individual contract an employee might claim to have.

Plaintiff opposes imposition of costs because he states that he refused to stipulate to dismissal in good faith because he believed that there was an agreement between KAT and Convoy which would require Convoy to retain all of KAT's drivers. Plaintiff notes that he specifically requested documentation relating to the relationship between KAT and Convoy and that he had to bring a motion to compel discovery responses. Plaintiff also notes that his counsel agreed on the record to dismiss the contract claim after she was assured that plaintiff was in fact in possession of all documents concerning the relationship between KAT and Convoy.

 After carefully considering the parties' arguments, the court finds that no fees should be assessed. Defendants have not shown that plaintiff's failure to dismiss Count III was in bad faith or that his theory was frivolous. The record shows that discovery was not completed when plaintiff's counsel was first asked to stipulate and that counsel did agree to dismiss within a reasonable period after it was satisfied that it had all the relevant documents.

## D. Count IV: Negligent and Intentional Infliction of Emotional Distress

### 1. Negligent Infliction of Emotion Distress

Defendants argue that plaintiff has failed to state a claim for negligent infliction of emotional distress because he has not alleged or suffered any physical injury. Plaintiff did not specifically address the elements of a cause of action under this theory, which is distinct from the intentional infliction of emotional distress. *See Quill v. Trans World Airlines, Inc.,* 361 N.W.2d 438, 443 (Minn.App.1985).

The intermediate appellate court in Minnesota has recognized two elements for the tort of negligent infliction of emotional distress: 1) a negligent infliction of emotional distress, and 2) accompanying physical injury. *See, e.g., Christenson v. Argonaut Insurance Co.,* 380 N.W.2d 515, 518 (Minn. App.1986). Even viewing the facts in the light most favorable to plaintiff, the court concludes that plaintiff is unable, as a matter of law, to meet the requirement of an accompanying physical injury. He claims that he suffered stress and embarrassment from Convoy's actions and is still suffering significant clinical depression. Even assuming that these allegations are true, they are not sufficient under Minnesota law to support a claim for negligent infliction of emotional distress.

### 2. Intentional Infliction of Emotional Distress

Defendants similarly argue that plaintiff's claims for intentional infliction of emotional distress is without merit because it is preempted by federal labor law and

the grievance procedure of the collective bargaining agreement. Further, they contend that defendants' conduct does not rise to the level of outrageous behavior necessary to support such a claim. Plaintiff, by contrast, argues that the National Labor Relations Act does not necessarily preempt an action for intentional infliction of emotional distress. He also contends that whether defendants' behavior was egregious enough to warrant recovery under this cause of action is an issue for the fact finder to determine.

The tort of intentional infliction of emotional distress is narrow in scope and limited to cases involving particularly egregious facts. It is unavailable unless a defendant intentionally or recklessly caused severe emotional distress by extreme and outrageous conduct. *Hubbard v. United Press International, Inc.*, 330 N.W.2d 428 (Minn.1983). The conduct at issue must be "utterly intolerable in a civilized society." *Id.* at 440, quoting Restatement (Second) of Torts, § 46, Comment d (1965). It is for the court to determine in the first instance whether the defendants' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Restatement (Second) of Torts, § 46, Comment h (1965).

■ In the instant case, the complaint fails to identify the allegedly tortious conduct. The record before the court indicates, however, that plaintiff complains that defendants harassed him by giving him the choice of resigning, being fired, or taking a polygraph test even though they knew the latter option was illegal. He also believes that his firing was further harrassment. Defendants' behavior, even when construed in the light most favorable to plaintiff, is not as a matter of law so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. *See Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 440 (Minn.1983); *Eklund v. Vincent Brass and Aluminum Co.*, 351 N.W.2d 371, 379 (Minn.App.1984). Minnesota cases which have allowed recovery for intentional infliction of emotional distress have involved such extreme acts as mutilating a corpse,[5] embalming a body without the relatives' permission,[6] or threatening a school girl with prison and public disgrace unless she signed a confession of immoral conduct.[7] Thus, plaintiff's cause of action based on this tort must be dismissed.[8]

### E. Court V: Misrepresentation and Fraud

Defendants contend that this count should be dismissed because it fails to allege fraud with enough particularity to satisfy Fed.R.Civ.P. 9(b). Plaintiff, in response, has amended his complaint to state the following incidences of fraud:

(1) upon taking over the traffic contract previously held by Kenosha Auto Transport, Defendant represented it would retain as employees the former employees of Kenosha who worked on the contract, when, in fact, Defendant intended to dismiss all such employees; and (2) after accusing Plaintiff of theft of a trivial amount of gas, Defendant represented to Plaintiff that he could resign, take a complaint through the union grievance procedure, or submit to a polygraph test, and that if he picked the latter option and was not found to be lying, he would not be dismissed.

He asks that he be allowed to serve his amended complaint or that the court dismiss the count with leave to amend if it finds that his original complaint insufficiently pled fraud and misrepresentation.

5. *Larson v. Chase*, 47 Minn. 307, 50 N.W. 238 (1891).

6. *Sworski v. Simons*, 208 Minn. 201, 293 N.W. 309 (1940).

7. *Johnson v. Sampson*, 167 Minn. 203, 208 N.W. 814 (1926).

8. Because of this result the court need not consider defendants' other arguments. The court does note, however, that defendants' argument concerning preemption appears sound.

Fed.R.Civ.P. 9(b) requires that in averments of fraud, the circumstances be stated with particularity. Paragraph XLIII of plaintiff's complaint stated that "Defendants' conduct was a misrepresentation to Plaintiff and resulted in a fraud committed upon Plaintiff." Such a conclusory allegation fails to satisfy the particularity requirement of rule 9(b). *See Decker v. Massey-Ferguson, Inc.,* 681 F.2d 111, 114 (2d Cir.1982); *Antinore v. Alexander & Alexander Services, Inc.,* 597 F.Supp. 1353 (D.Minn.1984).

Fed.R.Civ.P. 15(a) governs amendments of pleadings and provides that leave shall be "freely given when justice so requires." It is well-established, however, that the liberal amendment rule does not require the courts to indulge in futile gestures. *See, e.g., Holloway v. Dobbs,* 715 F.2d 390, 393 (8th Cir.1983). Leave to amend should be denied where the complaint, as amended, could not withstand a motion to dismiss. *Id.* at 392.

■ In the instant case, the plaintiff's fraud claims, as set out in the amended complaint, are preempted by federal labor law. *See Moore v. General Motors Corp.,* 739 F.2d 311 (8th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985). Plaintiff's first amended claim of fraud states that Convoy represented that it would retain former employees of KAT, including plaintiff, when it intended to dismiss such employees. This claim arises from plaintiff's right to continuous employment absent cause for discharge. Thus, it is based upon and intimately related to the collective bargaining agreement. *See, e.g.,* Central and Southern Conference Areas Supplemental Agreements Covering Truckaway, Local and Garage Operations, p. 89, Article 39. Similarly, plaintiff's second amended fraud claim pertains to a matter contained in the collective bargaining agreements. See Section 3 of Article 12 of the National Master Automobile Transporters Agreement ("No employee shall be required to take any form of lie detector test as a condition of employment").

The collective bargaining agreement governing Jeffers' employment relationship provides that "any and all disputes, including interpretations of contract provisions arising under, out of, in connection with, or in relation to this collective bargaining agreement shall be subject to the grievance procedure." Exh. 1, pp. 39, 40. Because plaintiff has failed to exhaust the contractual grievance procedure and the remedies it provides, an action for state common law fraud claims should not be allowed. *See Moore v. General Motors Corp.,* 739 F.2d 311 (8th Cir.1984), *cert. denied,* — U.S —, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985). Count V of plaintiff's complaint must therefore be dismissed with prejudice as the underlying claims, as identified in the amended complaint, are preempted by federal law.

### F. Count VI: Covenant of Good Faith and Fair Dealing

■ Defendants contend that they are entitled to summary judgment on this count because there is no express or implied covenant of good faith and fair dealing in the collective bargaining agreement between Convoy and plaintiff's union. Plaintiff claims that defendant Convoy waived its right to rely on the collective bargaining agreement by resorting to a polygraph test. He cites no authority for this novel contention, however.

The Minnesota courts have not read an implied covenant of good faith and fair dealing into all employment contracts. *Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853 (Minn.1986); *Wild v. Rarig,* 302 Minn. 419, 441, 234 N.W.2d 775, 790 (1975), *cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976). Moreover, Minnesota cases which have considered whether such a covenant exists have done so solely in the context of nonunion, "at-will" employees. *See, e.g., Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853 (Minn.1986); *Eklund v. Vincent Brass and Aluminum Co.,* 351 N.W.2d 371 (Minn.App.1984). No Minnesota case has

held that a covenant of good faith and fair dealing may be implied where an employee is covered by a collective bargaining agreement. Additionally, the court is persuaded by the logic of *Bertrand v. Quincy Market Cold Storage & Warehouse Co.*, 728 F.2d 568, 571 (1st Cir.1984), which held that no implied covenant exists where an employee is covered by a collective bargaining agreement. The court reasoned:

> The covenant [of good faith and fair dealing] has generally been implied in contracts of employment 'at will.' This, however, was not an at will employment contract; the company had negotiated away its right to discharge anyone except for 'just cause.' Since there is an explicit contractual provision giving the employee greater protection than the implied covenant, there is no need to imply the covenant.

728 F.2d at 568. For these reasons, defendants are entitled to summary judgment as to Count VI of plaintiff's complaint.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. Defendant Convoy Company's motion for summary judgment on Count I is denied. The individual defendants' motion for summary judgment on Count I is granted, and the claims against them in Count I are dismissed.

2. Defendants' motion to dismiss Count II is granted with respect to that part of the count which alleges violations of *Minn. Stat.* § 181.76, and those claims are dismissed. The allegations pertaining to *Minn.Stat.* § 181.75 remain in the case.

3. Defendants' motion for summary judgment as to Counts III, IV, V, and VI is granted; these counts are dismissed with prejudice.

4. Defendants' motion for costs and attorney's fees incurred in bringing their summary judgment motion on Count III is denied.