EAGLE TRANSPORT LTD., INC., Plaintiff,

v.

John E. O'CONNOR and John E. O'Connor & Sons, Inc., Defendants.

No. 77 Civ. 5030(MEL).

United States District Court, S. D. New York.

May 29, 1979.

Cardillo & Corbett, New York City, for plaintiff; Christophil B. Costas, New York City, of counsel.

Parker, Chapin, Flattau & Klimpl, New York City, for defendants; Mark Abramowitz, Lee W. Stremba, New York City, of counsel.

LASKER, District Judge.

This action arises out of a charter party agreement between Eagle Transport and Atlantic Shipping, Inc. Prior proceedings between Eagle and Atlantic resulted in a decision by an arbitration panel that Atlantic was liable to Eagle for breach of the agreement. Eagle now asserts that O'Connor and O'Connor & Sons are bound, as privies of Atlantic, by rulings made during the prior proceedings; that both defendants are *alter egos* of Atlantic and therefore personally liable for Atlantic's breach; and that O'Connor & Sons is additionally liable

to Eagle as Atlantic's guarantor for purposes of the charter party agreement. Eagle moves for summary judgment on these claims.

In an earlier action in this court, Judge Metzner, after a hearing conducted before Judge, then Magistrate, Goettel, held that Eagle and Atlantic had concluded a valid charter party and ordered that the parties proceed to arbitration for a determination whether Atlantic had breached the agreement. (75 Civ. 4488, June 3, 1976) A panel of three arbitrators found that Atlantic had breached the agreement and awarded Eagle damages amounting to $557,925.15. That award was confirmed by Judge Owen of this court (Memorandum Decision, 78 Civ. 2199, August 30, 1978). Relying on the Restatement of Judgments § 83 (1942), Eagle argues that the determinations in those earlier actions are binding on John O'Connor and O'Connor & Sons because, though not themselves parties to those proceedings, they were privies of Atlantic.

■ Eagle has established that there was privity between Atlantic and John E. O'Connor. A determination made against a corporation will be binding on a stockholder, officer or director in a subsequent proceeding if the individual controlled the earlier action in the furtherance of his own interests. *Kreager v. General Electric Corp.,* 497 F.2d 468, 472 (2d Cir.), *cert. denied,* 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974); *Ritchie v. Landau,* 475 F.2d 151, 155 n.2 (2d Cir. 1973); *Drier v. Tarpon Oil Co.,* 522 F.2d 199, 200 (5th Cir. 1975). John E. O'Connor was the president, sole director and sole shareholder of Atlantic. Because of his position, it is difficult to conclude that O'Connor was not in control of Atlantic's case in the earlier proceeding. By failing to present contrary evidence, O'Connor has impliedly conceded as much. He was, in fact, one of Atlantic's main witnesses. Furthermore, as the sole shareholder in Atlantic, he clearly was personally interested in the outcome of the litigation and in a position to control it. The Court of Appeals, on similar reasoning, has noted that an individual who was the president of a corporation and held only 42 percent of the corporation's stock would be bound by an earlier determination made against the corporation. *Ritchie v. Landau, supra.*

■ Because he was a "privy" of Atlantic, O'Connor is estopped from relitigating the determinations made against Atlantic in the earlier proceedings: that there was a charter party between Eagle and Atlantic; that Atlantic breached it; and that, as a result, Eagle suffered damages amounting to $557,925.15. That O'Connor was the privy of Atlantic does not, however, suffice to establish that he is personally liable for obligations incurred by Atlantic. To establish his personal liability, Eagle must also show that Atlantic was O'Connor's *alter ego. See Dudley v. Smith,* 504 F.2d 979, 982 (5th Cir. 1974).

■ In arguing that Atlantic should be held O'Connor's *alter ego,* Eagle relies primarily on the fact that Atlantic's capital amounted to only $1,000. Undercapitalization is a factor that weighs heavily in favor of a finding that the corporate form of an entity should be disregarded and the person in control of the corporation held responsible for acts undertaken in its name. *Mull v. Colt,* 31 F.R.D. 154, 163–64 (S.D.N.Y. 1962). Undercapitalization is to be measured in terms of the size of the corporation's undertakings. *Id.* at 163, citing *Anderson v. Abbott,* 321 U.S. 349, 362, 64 S.Ct. 531, 88 L.Ed. 793 (1944).

Atlantic committed itself to pay Eagle more than one million dollars over the five-month course of the charter party. The disparity between the amount of money with which Atlantic was capitalized and the size of that undertaking indicates that Atlantic was indeed severely undercapitalized. Nevertheless, summary determination of this issue is not warranted, particularly since, *inter alia,* it appears that Eagle had full knowledge of Atlantic's undercapitalization. Indeed, "[i]t was for this very reason that Eagle sought, and obtained, security for the performance of the charter party in the form of the guarantee of O'Connor & Sons." (Affidavit of Christophil B. Costas, October 26, 1978, ¶ 21) *Fisser v. Interna-*

*tional Bank,* 282 F.2d 231 (2d Cir. 1960) is significant in this regard. There the court declined to adopt plaintiff's argument that mere undercapitalization is enough to warrant a piercing of the corporate veil. *Id.* at 240. Of particular importance to that court was whether the plaintiff-creditor seeking to pierce the corporate veil of the debtor had been fraudulently led to believe that he was dealing with a financially responsible entity. *Id.* at 239.

Eagle asserts similar *alter ego* and privity theories as to O'Connor & Sons. However, the evidence before the court does not establish that the relationship between Atlantic and O'Connor & Sons was sufficiently close to entitle Eagle to judgment on either theory.

█ O'Connor & Sons owned no stock in Atlantic. The only connections between the two corporations were that John O'Connor, Atlantic's president and sole stockholder, was also president and a 42 percent stockholder of O'Connor & Sons; and that the two corporations had the same address (although defendants assert that they occupied different offices), and telephone and telex numbers. These factors do not by themselves establish that Atlantic was so "dominated" by O'Connor & Sons as to be its *alter ego.* See *Fisser v. International Bank, supra.* Nor do they alone establish that O'Connor & Sons was Atlantic's "virtual representative", *Aerojet-General Corporation v. Askew,* 511 F.2d 710, 719 (5th Cir. 1975), *appeal dismissed,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975), or possessed such an "identity of interest", *Kreager v. General Electric Co.,* 497 F.2d 468, 472 (2d Cir. 1974), with Atlantic as to render it the latter's privy.

█ Eagle argues, however, that the fact that O'Connor & Sons guaranteed Atlantic's obligations under the charter party is enough to establish privity between the two corporations. It is true that a guarantor may be bound by the results of a prior action to which the principal debtor was a party if the guarantor was given notice of and an opportunity to participate in the earlier proceedings. *Walter E. Heller &*

*Company v. Cox,* 343 F.Supp. 519 (S.D.N.Y. 1972), *aff'd,* 486 F.2d 1398 (2d Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 46, 38 L.Ed.2d 61 (1973).

However, Eagle may not avail itself of this principle since it has not satisfactorily established that O'Connor & Sons did in fact obligate itself to act as Atlantic's guarantor. To support its allegation that O'Connor & Sons was Atlantic's guarantor, Eagle has submitted a copy of a telex sent to O'Connor & Sons by the broker who acted on behalf of Atlantic in negotiating the charter party in question here. The telex indicated that O'Connor & Sons would issue a letter of guarantee of Atlantic's performance under the charter party. Eagle argues that by failing to object to that telex O'Connor & Sons impliedly agreed to the guarantee.

Whether a failure to object has had the effect of assent is a question that typically requires an examination of all the surrounding circumstances. We are unable to conclude on the basis of the evidence presently of record whether O'Connor & Sons did indeed obligate itself to act as a guarantor. There is also a question, raised by Judge Goettel in the Eagle-Atlantic proceedings, as to whether the broker who acted as Atlantic's agent in negotiating for the charter party even had the authority to obligate O'Connor & Sons to furnish a guarantee.

█ In sum, the motion is granted to the extent of finding that John O'Connor was in privity with Atlantic and is therefore bound by rulings in the prior proceedings between Eagle and Atlantic. However, unresolved factual questions remain as to whether Atlantic was the *alter ego* of either of the defendants; whether O'Connor & Sons was in privity with Atlantic; and whether O'Connor & Sons obligated itself to act as guarantor of the charter party agreement. Therefore, the motion is otherwise denied.

It is so ordered.