193 N.J. Super. 389 (1984)
474 A.2d 1072
MARTIN RUSH, UROLOGY ASSOCIATES, P.A., WALTER KAHN AND MARCELLUS AND MASSELL, P.A., PARTNERS TRADING UNDER THE NAME OF 70 EAST AND MARTIN RUSH, UROLOGY ASSOCIATES, P.A., A CORPORATION OF THE STATE OF NEW JERSEY, WALTER KAHN, AND MARCELLUS AND MASSELL, P.A., A PROFESSIONAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS,
v.
KUHN, SMITH & HARRIS, INC., A CORPORATION OF THE STATE OF NEW YORK, PAUL W. REILLY; JOHN C. MORRIS; FRAIOLI-BLUM-YESSELMAN AND PARTNERS, DEFENDANTS-RESPONDENTS, AND FRAIOLI-BLUM-YESSELMAN AND PARTNERS, DEFENDANTS, THIRD PARTY PLAINTIFFS-RESPONDENTS,
v.
ESTATE OF DR. MARTIN RUSH, UROLOGY ASSOCIATES, P.A., WALTER KAHN, AND MARCELLUS AND MASSELL, P.A., PARTNERS TRADING UNDER THE NAME OF 70 EAST, THIRD PARTY DEFENDANTS-APPELLANTS. KUHN, SMITH & HARRIS, INC., A BODY CORPORATE, PLAINTIFF-RESPONDENT,
v.
DR. WALTER J. KAHN, DR. MARTIN RUSH, MARCELLUS & MASSELL, P.A., UROLOGY PROPERTIES, INC., INDIVIDUALLY AND AS PARTNERS T/A 70 EAST, DEFENDANTS-APPELLANTS, AND HARRY RICH ACOUSTICS, INC., HUDIK-ROSS, INC., RED BANK ELECTRIC, INC., B. KATCHEN IRON WORKS, INC., DEFENDANTS, AND PAUL W. REILLY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1984.
Decided February 8, 1984.
*391 Before Judges BISCHOFF, PETRELLA and BRODY.
Merritt T. Viscardi argued the cause for appellants (Apruzzese & McDermott, attorneys; Merritt T. Viscardi on the brief).
John C. Givens argued the cause for respondent Kuhn, Smith & Harris, Inc. (Parsons, Canzona, Blair & Warren, attorneys; John C. Givens on the brief).
Frederick C. Heissenbuttel argued the cause for respondent Paul W. Reilly (DeYoe and Guiney, attorneys; Frederick C. Heissenbuttel on the brief).
H. Frank Carpentier argued the cause for respondents Fraioli, Blum & Yesselman (Carton, Nary, Witt & Arvanitis, attorneys; H. Frank Carpentier of counsel; Robert D. Faccone on the brief).
Connell, Foley & Geiser, attorneys for respondent John C. Morris Associates (Peter D. Manahan of counsel; Peter J. Smith on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
This protracted litigation was commenced in 1975 to resolve disputes arising out of the construction of an office building. The issues on these appeals demonstrate the serious problems caused by using arbitration to resolve some aspects of a single, complex controversy and using litigation to resolve others.
*392 Plaintiffs are four medical doctors[1] and the partnership they formed to build and own a medical office building that each would occupy as a separate tenant. (In their capacity as owners of the property the doctors will be referred to as "partners." Otherwise they will be referred to as "tenants.") The partners entered into two contracts, each containing an arbitration clause. One was with defendant Reilly (the architect) and the other with defendant Kuhn, Smith & Harris, Inc. (the contractor). The architect agreed to design the building and the contractor agreed to build it. The architect employed two consulting engineers, defendant Morris and defendant Fraioli-Blum-Yesselman (the engineers).
A provision in the building contract required completion of the building within 300 days and made time of the essence. The building was not substantially completed until 15 months past the contract deadline. The basic liability issues in the case are factual: who and what caused the delay. Each of the parties blames the others. Additional disputes relate to workmanship and extras.
Reasons for the delay largely originate in the partners' decision to scale down the project for economic reasons. Charges are made that the architect was too slow and negligent in making the necessary changes, the partners were too slow in approving them, and the contractor was too slow and negligent in implementing them.
The contractor demanded arbitration, the first step anyone took toward a formal resolution of the dispute. Plaintiffs thereupon brought this action to litigate claims of the partnership and of the tenants who were delayed in relocating their offices. Over plaintiffs' objection that the contractor's demand for arbitration was out of time, the trial court dismissed and referred to arbitration all claims between the partnership and *393 the contractor. The court also acceded to plaintiffs' request that since there was to be arbitration it should include claims involving the architect because of the arbitration clause in his contract. The judge stated in his letter opinion that the claims to be arbitrated are "dismissed without adversely affecting the claims of the remaining plaintiffs [the tenants] suing in their individual capacities. That part of the complaint which has not been dismissed is stayed pending completion of the arbitration." The judge also stayed discovery. The order was certified as a final judgment and plaintiffs appealed. This court affirmed substantially for the reasons given by the trial judge.
The arbitration took three years during which there were 21 days of hearings. The contractor alleged damages totaling $325,333.22. The partnership alleged damages totaling about $166,000 and claimed indemnification from the architect for any award it may have to pay the contractor. The architect sought $3,600, the balance of his fee which the partnership had withheld. The arbitrators ruled that the trial judge's order barred the tenants from proving their damages in arbitration.
By their award the arbitrators ordered the partnership to pay the contractor $137,700 and ordered the architect to pay the partnership $24,400 including the withheld portion of his fee. There is nothing on the face of the award that indicates what those sums represent.
The Law Division confirmed the award over the partners' objection that it was inconsistent. They had argued that even if the contractor's award included all the non-delay damages claimed, the remaining sum awarded the contractor far exceeded the sum awarded the partnership against the architect. The premise of this argument is that any delay attributed to the partnership was entirely the fault of the architect who therefore should have been made to indemnify the partnership in full. The partnership appealed the judgment of confirmation and this court affirmed. In an unreported opinion we stated, "Unless otherwise specified in an arbitration agreement, an *394 allocation of items supporting the calculation of the award is not required." We suggested that the award may have been reached through set-offs based on unstated findings that each party was responsible for a percentage of the delay.
After the tenants' claims were reactivated they were summarily dismissed on the ground that the tenants and the partners are one and the same, and because the partnership lost in arbitration, the tenants are collaterally estopped from asserting that any of the defendants is liable for their damages. The partnership then unsuccessfully moved to set aside the judgment confirming the award on the ground that whereas the order to arbitrate appeared to preserve the tenants' claims it had the effect of destroying them.
The tenants appeal from the judgment dismissing their claims. In a separate consolidated appeal, the partnership appeals from the order denying its motion to vacate the judgment confirming the award. We reverse the judgment dismissing the tenants' claims and affirm the order denying the partnership's motion to vacate the judgment confirming the award.

I
In dismissing the tenants' claims, the trial judge applied the doctrine of collateral estoppel as it is stated in McAndrew v. Mularchuk, 38 N.J. 156, 161 (1962):
Generally the question to be decided is whether a party has had his day in court on an issue, rather than whether he has had his day in court on that issue against a particular litigant.
The trial judge concluded that the tenants as partners were parties to the arbitration where they had their "day in court" and lost on the issue of who was to blame for the delay. He held that the tenants were therefore precluded by the award from retrying the same issue in court to establish the liability of any of the defendants.
It has been held in other jurisdictions that the doctrine of collateral estoppel applies even though the prior proceeding is an arbitration. Ritchie v. Landau, 475 F.2d 151 (2 Cir.1973); *395 ACMAT Corp. v. International Union of Operating Engineers, 442 F. Supp. 772 (D.Conn. 1977); Goldstein v. Doft, 236 F. Supp. 730 (S.D.N.Y. 1964), aff'd 353 F.2d 484 (2 Cir.1965), cert. den. 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1966); Greenspan v. Doldorf, 87 App.Div.2d 884, 449 N.Y.S.2d 535 (App.Div. 1982); 6 C.J.S., Arbitration, § 128.
Where part of an entire controversy has been decided in arbitration and part remains to be decided in court, applying the collateral estoppel doctrine would be a major step toward eliminating wasteful and debilitating litigation of issues in court that have already been decided in arbitration.
Collateral estoppel cannot be applied here, however, because the arbitrators made no findings respecting the issues to be retried. The award falls far short of compensating any party the amount claimed due. This could mean that the arbitrators found the partners/tenants responsible for some of the delay; but as we noted when the matter was last before us, one cannot tell from the award what percentage of the delay the arbitrators attributed to the partnership. The award could also mean that the arbitrators found the proof inadequate as to some claims. A party cannot be collaterally estopped from retrying an issue unless one knows the resolution of the issue in the prior proceeding. Ettin v. Ava Truck Leasing, Inc., 53 N.J. 463, 480 (1969).
The award of an arbitrator is generally expressed as a net figure without explanation or breakdown. In that respect it is similar to the general verdict of a jury, which may express the resolution of many issues without revealing how any was decided. If it is necessary to know the finding of a jury on a particular issue, the judge must ask for a special verdict. R. 4:39-1. As Judge Pressler has noted:
The use of the special verdict technique is particularly desirable where successive, related litigation may be anticipated since in these circumstances it is essential to be able to determine the precise issues decided in the first trial in order to avoid their retrial in later litigation by application of the doctrine of *396 collateral estoppel. [Pressler, Current N.J. Court Rules, Comment R. 4:39-1 (1984).]
Because the arbitrators made no separate findings, all issues relevant to the tenants' claims must be tried without regard to the award. We are not presented with the question of whether a judge may compel arbitrators to make separate findings over the objection of a party in arbitration.[2]

II
Several months before dismissing their claims, the trial judge denied the tenants' motion to amend answers to interrogatories. The amendment would permit the tenants to recover substantial lost profits not referred to in the original answers. The judge relied on R. 4:17-7 which bars amendments to interrogatories served "later than 20 days prior to the first date fixed for trial." He found no "extraordinary or compelling reason" to justify an exception to the general rule. The rule does not apply here because it is far from clear that the first date fixed for trial was within 20 days of the tenants' attempt to amend their answers.
These are the facts. On February 4, 1981 the trial judge who confirmed the award also entered an order reactivating the *397 tenants' case and directing that discovery be completed "on or before July 25, 1981." The attorneys did not complete discovery within that period. The tenants' answers to interrogatories being long overdue, on June 23 the engineers' attorneys served notice that on July 17 they would move to dismiss for failure to answer the interrogatories. Anxious to serve the answers before the return day of the motion, one of the tenants' attorneys (then co-counsel with their present attorneys) prepared and served on July 16 uncertified answers that were obviously inadequate to describe the damages claimed. The accompanying letter expressed the "hope" that the tenants would certify the answers "by next week, but in any event before trial." The motion was thereupon withdrawn. The answers were never certified.
Meanwhile, on July 13 the clerk sent a computer-generated notice that a "trial call" would be held July 27. That date is also referred to in the notice as the "daily trial date." The judge acknowledged, "With the advent of computers, I'm not in the position to make any comment as to how the list works...." Nevertheless, he concluded that July 27 was understood by plaintiffs' attorneys to be the "first date fixed for trial" because they had asked that it be put off to a later date.
No trial was held on July 27. Instead the assignment judge, recognizing the complexity of the case, notified the parties on August 17 that he had specially assigned the case to a judge "who will schedule it for a pretrial." The pretrial conference was held September 29 at which time the judge fixed January 5, 1982 as the trial date.
The tenants' pretrial memorandum contained a fuller and more detailed description of their damage claims but the judge held that they were bound by the answers supplied July 16. He refused to allow them to amend those answers and ordered them to sign a certification that the answers were true. In a later order the judge ruled that the tenants would be bound by the answers regardless of whether they signed a certification. The pretrial order permitted the architect and engineers to file a third-party complaint against the partnership and permitted *398 the partnership to serve interrogatories upon them with deadlines before the January 5, 1982 trial date.
The tenants should have been permitted to amend the interrogatory answers. Realistically the first date fixed for trial was January 5, 1982, the date fixed in the pretrial order. The earlier date was set by a computer without regard to the nature and status of the case. July 27 was only two days after completion of the discovery period fixed in the February 4 order. It predated the assignment judge's letter in which he recognized that the case required assignment to a single judge for management and trial. It predated the pretrial conference when a trial date was set.
Reversed and remanded for further proceedings consistent with this opinion. There is no need to discuss the issues raised in the appeal from the order denying the partnership's motion to vacate the judgment confirming the award. The partnership argues in that appeal that the order to arbitrate had the effect of precluding the tenants from proving their damages. Our opinion renders that argument moot. The order is therefore affirmed.
NOTES
[1] Two are professional corporations. After the death of plaintiff Rush, his estate was substituted.
[2] A party in arbitration, fearing the possible adverse effect of collateral estoppel, may be reluctant to request the arbitrators to make separate findings. The Legislature, however, might consider amending the Arbitration Act, N.J.S.A. 2A:24-1 et seq., to direct or authorize arbitrators to make separate findings in cases where later litigation involving the same issues is in prospect. We note in the recently adopted act providing for arbitration of certain automobile accident claims, L. 1983, c. 358, N.J.S.A. 39:6A-24 et seq., arbitrators are required to set forth in writing "the issues in controversy" and their "findings and conclusions of law and fact." There is a special need for this requirement in automobile accident claims arbitration because the award is not binding. To discourage the parties from trying the dispute in court following an award, they must be satisfied that the issues were identified and considered in arbitration as they would be in court. As this case demonstrates, there is also a special need for arbitrators to make separate findings when part of the controversy before them awaits resolution in court. Without such findings the doctrine of collateral estoppel often cannot be used to reduce the burden of repetitious litigation.