**BANKERS TRUST COMPANY, Plaintiff,**

**v.**

**Daniel RHOADES, Herman Soifer and Milton Braten, Defendants.**

No. 82 Civ. 5590 (WCC).

United States District Court, S.D. New York.

Dec. 6, 1989.

Moses & Singer, New York City, for plaintiff; David Rabinowitz and David Picker, of counsel.

Rosenman & Colin, New York City, for defendant, Herman Soifer; Joel W. Sternman and Audry Weintrob, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This action is before the Court on the motion of plaintiff Bankers Trust Company ("Bankers") for an order (1) that defendants Milton Braten, Daniel Rhoades, and Herman Soifer are collaterally estopped from relitigating issues resolved in *Matter of Braten Apparel Corp.*, 21 B.R. 239 (Bkrtcy.S.D.N.Y.1982), *aff'd*, 26 B.R. 1009, *aff'd w/out op.*, 742 F.2d 1435 (2d Cir.1983) or, alternatively, that the bankruptcy judge's findings, as well as the testimony and evidence admitted at that trial, are admissible as evidence in this action and (2) that depositions taken in an earlier action against Daniel Rhoades and Braten Apparel Corporation ("BAC") can be used against the present defendants as if originally taken in this action. For the reasons outlined below, the first portion of Bankers' motion is granted in part and denied in part and the second portion is granted.

## Background

On September 5, 1974, BAC, a corporation wholly owned by Milton Braten and his father-in-law, filed a Chapter 11 plan of arrangement with the United States Bankruptcy Court for the Southern District of New York. Bankers, BAC's largest creditor; accepted BAC's plan and the bankruptcy judge approved the plan on March 12, 1976.

In August of 1974, BAC had acquired ownership of Brookfield Clothes, Inc. ("Brookfield"). At the time of the confirmation proceedings, BAC represented to the bankruptcy court and its creditors that it no longer owned Brookfield, having lost its interest to Herman Soifer under the terms of an agreement between Braten and Soifer. After learning that Soifer had returned Brookfield to BAC after the bankruptcy court's confirmation of the Chapter 11 plan, Bankers commenced a proceeding to have the confirmation revoked. In June of 1982, Judge Babitt ordered the confirmation revoked after ruling that BAC had committed bankruptcy fraud by concealing its ownership interest in Brookfield and providing misleading information to its creditors and the court throughout the Chapter 11 proceedings. *Braten*, 21 B.R. at 256.

The present motion concerns Bankers' suit under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Title 18 U.S.C. § 1961 *et seq.*, alleging damages arising out of defendants' fraudulent concealment of assets in connection with the bankruptcy proceedings, as well as fraudulent transfer of funds, frivolous lawsuits and judicial bribery in connection with actions filed in South Carolina. This Court has rendered three previous decisions in this matter. *See Bankers Trust Co. v. Feldesman*, 566 F.Supp. 1235 (S.D.N.Y. 1983), *aff'd sub nom, Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984), *vacated*, 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985), *on remand, Bankers Trust Co. v. Feldesman*, 648 F.Supp. 17 (S.D.N.Y. 1986); *on reargument, Bankers Trust Co. v. Feldesman*, 676 F.Supp. 496 (S.D.N.Y. 1987), *rev'd sub nom, Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). Familiarity with those decisions is presumed.

## Collateral Estoppel

As a preliminary matter, this Court notes that the Second Circuit Court's opinion in *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989) does not foreclose a finding of collateral estoppel on the issue of bankruptcy fraud. In its decision, the Court of Appeals adopted a rule of separate accrual, holding that for each injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages accrues at the time the plaintiff discovers or should have discovered the injury. *Id.* at 1102. The court then

grouped Bankers' claims into three categories: (a) past legal fees and other expenses, (b) loss of legitimate debt and related expenses, and (c) future legal fees and other expenses, and directed this court to dismiss Bankers' claims in the second two categories because damages were too speculative and no cause of action had yet accrued.[1]

Defendants argue that because the Second Circuit Court stated that no cause of action had yet accrued as to Banker's claim of loss of legitimate debt, Bankers is precluded from invoking collateral estoppel at this time. Defendants urge this Court to construe the Court of Appeals decision to preclude not only litigation of the "loss of legitimate debt" claim, but also any matters closely related to it.

Defendants' argument, however, is based on a misreading of the Second Circuit Court's opinion. Bankers alleged two separate injuries arising out of the bankruptcy proceedings, one a claim for past legal fees and expenses and one for damages which had not yet accrued. If the Court of Appeals had intended to preclude all litigation which implicated the bankruptcy proceedings, it would not have expressly stated that a cause of action had accrued with respect to the claim for past legal fees and expenses, including fees and expenses incurred in obtaining a revocation of the initial reorganization plan. *Id.* at 1106. Thus a finding of bankruptcy fraud is relevant not only to the unaccrued damages, but also to establish a RICO violation with regard to any damages that have accrued. Thus, Bankers is entitled, in support of its effort to recover its past legal fees and expenses, to prove that BAC committed fraud in the bankruptcy proceedings.

Since a consideration of the application of collateral estoppel is appropriate, this Court now turns to the merits of Bankers' claim. Bankers argues that in the present RICO action, Braten, Soifer and Rhoades are collaterally estopped from relitigating the issue whether BAC perpetrated bankruptcy fraud. Defendants contend that their interests in the revocation proceeding, in which they were not named parties, were insufficient to bind them in the present action.

The doctrine of collateral estoppel precludes relitigation of issues of fact or law which have been actually litigated and whose determination was necessary to the outcome of the first action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 727–28 (2d Cir.1981). In moving to set aside the confirmation of BAC's Chapter 11 plan, Bankers had the burden of proving each element set forth in Section 386 of the Bankruptcy Act, 11 U.S.C. § 786, including the charge that BAC, with actual fraudulent intent, practiced fraud in procuring confirmation of the arrangement. *See generally*, 9 Collier on Bankruptcy ¶¶ 11.02, 11.02(3) (14th ed. 1978). Extensive discovery took place in the revocation proceeding. Over 2,700 pages of testimony and over 275 documents were received in evidence. The trial itself lasted eighteen days. In his thorough opinion, Judge Babitt concluded as an "ultimate finding" that "fraud was practiced by BAC in the procurement of confirmation of its Chapter XI plan." *Braten*, 21 B.R. at 259.[2]

In the present action, Bankers alleges that defendants' fraudulent actions in con-

---

1. The Second Circuit Court reasoned that Bankers' claim for injuries suffered as a result of its lost debt was indefinite because of its relationship to the ongoing bankruptcy proceedings. For example, "should the bankruptcy trustee ultimately recover all the fraudulently transferred assets, Bankers' injury could be significantly reduced; conversely should the assets never be recovered, or should the bankruptcy court order the claim abandoned, Bankers' injury would be much more severe." *Bankers*, 859 F.2d at 1106. As the bankruptcy proceedings remain pending, these claims remain unaccrued.

2. While it is true, as Rhoades asserts, that he did not become involved with BAC until after the filing of the confirmation plan, this does not exempt his participation in the bankruptcy fraud. Judge Babitt's findings included, for example, that Rhoades and Braten circulated information before the confirmation of the plan that "concealed, confused, and disclosed only part of the real truth, without any intention of ever informing anyone of BAC's continuing ownership of Brookfield." *Braten*, 21 B.R. at 258.

cealing BAC's interest in Brookfield through the use of a sham agreement between Braten and Soifer and in providing false information to the bankruptcy court constitute "racketeering activities" within the meaning of the RICO statute. Thus, the principal factual issue presented in this suit is identical to that actually litigated and adjudged in the revocation proceeding.

■ Collateral estoppel ordinarily applies only against persons who were parties to the prior suit, because nonparties generally have not had a full and fair opportunity to litigate the issues raised in the previous action. *See Blonder–Tongue Laboratories, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). Under some circumstances, however, nonparties can be precluded from litigating previously determined issues. As the Fifth Circuit Court noted in *Southwest Airlines Co. v. Texas Int'l. Airlines*, 546 F.2d 84, 95 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977):

> Federal courts have deemed several types of relationships "sufficiently close" to justify preclusion. First, a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party.... Second, a nonparty who controlled the original suit will be bound by the resulting judgment.... Third, federal courts will bind a nonparty whose interests were represented adequately by a party in the original suit. (citations omitted).

Bankers maintain that defendants are bound by the prior judgment rendered against BAC in the revocation proceeding under the second and third of these theories.[3]

## I. DANIEL RHOADES

### A. Control By a Nonparty

Bankers first argues that Braten, Soifer and Rhoades are bound by the bankruptcy court's determination because they actively participated in the revocation proceedings. Defendant Soifer contends that a nonparty must exercise actual control over the proceedings in order to be bound. In *Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979), the Supreme Court stated that it was proper to bind nonparties to the results of a prior litigation when "nonparties assume control over litigation in which they have a direct financial or proprietary interest ..." A similar statement is contained in Section 39 of the Restatement (Second) of Judgments (1982):

> [a] person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party.

*See also* Restatement (2d) of Judgments § 59(3)(a) (shareholders of closely held corporation who actively participate in action on behalf of the corporation should ordinarily be bound by prior judgment).

■ The issue of whether to apply collateral estoppel against defendants turns on the extent of their control of the bankruptcy proceedings. Thus, the mere fact that Soifer, Braten and Rhoades testified in the revocation proceeding is insufficient to support the application of collateral estoppel against them. Rather, control requires, for example, that the party has effective choice on matters such as legal theories and the decision whether to seek appellate review. Restatement (2d) of Judgments § 39 comment c; *accord*, 1B Moore's Federal Practice ¶ 0.411[6] at 456–58 (2d ed. 1988).

■ The burden of proving such control rests with the party seeking to invoke collateral estoppel. *Church of Scientology*

---

**3.** Defendant Soifer argues that the control of litigation test is the sole standard for a determination of whether to bind nonparties. This Court rejects this contention. While it is true, as Soifer asserts, that the Supreme Court has noted that commentators have criticized the use of the term "privies", *Montana v. United States,* 440 U.S. 147, 154 n. 5, 99 S.Ct. 970, 974 n. 5, 59 L.Ed.2d 210 (1979), the Court in no way suggested that the control test, as applied in *Montana,* was to be the sole test to determine whether nonparties could be bound by the results of prior litigation. Further, the Second Circuit has continued to apply the privity test in numerous contexts to determine whether to bind nonparties. *See infra* page 428.

of Cal. v. Linberg, 529 F.Supp. 945, 961 (C.D.Cal.1981). Bankers has failed to establish that Rhoades exercised sufficient control over the bankruptcy proceedings to be bound by the determination against BAC. Both Rhoades and the law firm of Ruskin, Schlissel, Moscou & Evans were counsel to BAC in the revocation proceedings. As an attorney of record, Rhoades played a role in the actual litigation of the proceedings. He conducted cross-examinations and engaged in argument before the Court. But Rhoades' mere status as an attorney is insufficient to bind him to the prior judgment. *Goodman v. Solack Estates, Inc.*, 78 A.D.2d 513, 432 N.Y.S.2d 5 (1st Dep't 1980).

Bankers argues that the present case differs from *Goodman,* as Rhoades is also an officer of BAC. This is unpersuasive in the context of this case. While Rhoades' position as an officer gave him some personal interest in the outcome of the proceedings, it is insufficient to support a finding that Rhoades exercised independent judgment rather than following the instructions of BAC's two shareholders. Furthermore, Bankers has not shown that Rhoades, and not the Ruskin firm, controlled matters of legal strategy.

## B. Identity of Interests

■ "The question whether a party's interests in a case are virtually representative of the interest of a nonparty is one of fact for the trial court." *Aerojet–General Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). The privity determination depends on whether, under the circumstances, the interests of the nonparty were adequately represented in the prior proceeding. *See e.g. Ellentuck v. Klein,* 570 F.2d 414, 425–26 (2d Cir.1978); *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1233 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *South-*

west *Airlines,* 546 F.2d at 95. As the Second Circuit Court explained in *Expert Electric,* 554 F.2d at 1233, the theory underlying this determination is that "the party bound is in substance the one whose interests were at stake in the prior litigation."

Bankers has failed to prove that BAC was Rhoades' "virtual representative" to the extent that they shared an identity of interests. Bankers maintains that because corporate officers may be held liable for torts in which they participate, *see State v. Ole Olsen, Ltd.,* 35 N.Y.2d 979, 365 N.Y. S.2d 528, 324 N.E.2d 886 (1975), it is proper to bind Rhoades to the results of the revocation proceeding. While it is true that officers may be personally liable for torts committed on behalf of a corporation, this alone does not justify the application of collateral estoppel against officers and directors with respect to decisions adverse to the corporation.

Bankers further contends that because bankruptcy fraud is a felony, Rhoades had a sufficient interest in the bankruptcy proceedings. That argument stands logic on its head, because the bankruptcy court's decision would not be given collateral estoppel effect in a criminal trial in view of the different burdens of proof involved. *See* 1B Moore's ¶ 0.441[3–3] at 737–38.[4] This Court finds that Rhoades' interests do not rise to the level of identity of interests necessary to bind a nonparty to a prior judgment.

## II. SOIFER AND BRATEN

■ Braten and Soifer, as 55% and 45% shareholders respectively, had a direct financial stake in the outcome of the revocation proceeding. The foreseeable results of the bankruptcy revocation proceeding included the possibility of BAC's liquidation. *See* Bankruptcy Rule 11–41(1), (2). Both Braten and Soifer testified at the revocation proceeding concerning the circum-

---

**4.** This is true despite dictum to the contrary in *Yates v. United States,* 354 U.S. 298, 335, 77 S.Ct. 1064, 1085, 1 L.Ed.2d 1356 (1957) (collateral estoppel not made inappropriate by fact that prior proceeding was civil and current proceeding is criminal), *overruled on other grounds,*

*Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). In *Yates,* the Supreme Court assumed that substantially the same burden of proof was applicable in the prior denaturalization proceeding as in the criminal action.

stances and motivations behind the creation and interpretation of the shareholders agreement.

Sufficient evidence exists to support binding Braten to the prior judgment. As 55% shareholder and president of BAC, it is obvious that Braten had effective control of the litigation. By not offering any facts to the contrary, defendants have impliedly conceded as much. *See Eagle Transport Ltd. v. O'Connor,* 470 F.Supp. 731 (S.D.N.Y.1979); *see also In re Teltronics Serv., Inc.,* 762 F.2d 185 (2d Cir.1985) (president, chairman of the board and 20% shareholder bound by prior judgment against corporation).

The facts in the present case are similar to those in *Eagle Transport,* in which the president, sole shareholder and sole director of a corporation was deemed to be in control of prior proceedings against the corporation and collaterally estopped from relitigating an issue decided against the corporation. Thus, because Bankers adequately has shown that Braten exerted effective control over the proceedings, Braten is collaterally estopped from relitigating the determination of bankruptcy fraud.

■ As the only other shareholder of BAC, Soifer could be deemed to have participated in controlling the litigation in the revocation proceeding. While Bankers has not provided this Court with examples of Soifer's "apparent day-to-day leadership role in the prior litigation," *see Teltronics,* 762 F.2d at 191, Soifer was BAC's only other shareholder, and he provided this Court with no specific evidence to rebut the highly plausible inference that he shared control of the proceedings.

In any event, it is clear that BAC and Soifer, one of its principal shareholders, had a substantial identity of interest in avoiding a finding of bankruptcy fraud. Besides the possibility of losing his investment, future litigation against Soifer was foreseeable given the previous amount of litigation between the parties and their hostile relationship. *See e.g. Bankers Trust Co. v. Braten,* 101 Misc.2d 227, 420 N.Y. S.2d 584 (Sup.1979). Because Soifer and BAC shared an identity of interest in the revocation proceeding, Soifer is bound by the bankruptcy court's determination of bankruptcy fraud.

### Admissibility Of Testimony, Evidence And Judicial Findings

■ As Rhoades is not collaterally estopped from relitigating the issue of bankruptcy fraud, it is necessary to address Bankers' alternative argument that the prior testimony and evidence, as well as the findings contained in the bankruptcy court decision, are admissible as evidence against Rhoades in this action under Fed.R.Civ.P. 32(a) and Fed.R.Evid. 804(b)(1). This Court finds that it would be inappropriate to make a blanket ruling allowing in all the testimony and evidence without having an opportunity to review the evidence or to hear specific objections to its admissibility.

At this time, Bankers has not made the necessary showing to support admissibility of the evidence. This Court notes that Fed.R.Civ.P. 32(a) discusses only the admissibility of depositions; it does not literally apply to prior court testimony. Further, while Bankers argues that Fed.R.Evid. 804(b)(1) expressly covers "testimony given as a witness at another hearing of ... 'a different proceeding ...,'" Bankers ignores the rule's requirement that the declarant must be "unavailable" to testify in the current proceeding. Since no showing has been made that any of the persons who testified at the revocation proceedings are "unavailable" in this action, the testimony cannot be admitted at trial under the rule at this time.

Lastly, while Bankers argues that the bankruptcy judge's findings are admissible under Fed.R.Evid. 803(8),[5] Bankers cites no authority for application of the rule in the present circumstances.

---

5. Fed.R.Evid. 803(8) provides, in relevant part, the following exception to the hearsay rule:

    Records, reports, statements or data compilations in any form, of public offices or agencies, setting forth ... (C) in civil actions ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate a lack of trustworthiness.

### Treatment Of Depositions From 1981 Suit As If Originally Taken In This Action

In 1981, Bankers brought suit against Rhoades and BAC in the Southern District of New York, *Bankers Trust Co. v. Rhoades, et al.*, No. 81 Civ. 6849 ("Civil Rights Action"), alleging violations of Bankers' civil rights in connection with two lawsuits, brought separately by Braten and BAC, before the South Carolina Circuit Court. Bankers averred that Rhoades formed a South Carolina corporation beneficially owned by Braten and Soifer to purchase or assume a mortgage granted to a local bank by a corporation of which the South Carolina judge was a principal and personally liable up to $100,000. In the Braten lawsuit, the South Carolina judge ultimately recused himself because of the apparent conflict of interest. In the BAC action, the same judge denied Bankers' motion to dismiss the action, but that decision was reversed by the South Carolina Supreme Court. Bankers' suit in the Southern District of New York was voluntarily dismissed without prejudice because of the pendency of this action.

Bankers now seeks a ruling that the thirteen depositions taken in the latter action can be used against the defendants as if originally taken in this action under Fed. R.Civ.P. 32(a)(4), which provides, in relevant part:

> when an action has been brought in any court ... and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therein.[6]

Since the depositions were "lawfully taken and duly filed" in the Civil Rights Action and the same subject matter is involved, they clearly may be used against Rhoades, who was a party to that action, as if originally taken in this action. Whether the depositions will be treated as if originally taken in this action as to Soifer and Braten depends on whether they are "successors in interest" to Rhoades and BAC in the Civil Rights Action. While "successors in interest" may upon first impression appear to be limited to substitution of parties, the courts have applied a significantly broader standard. The standard used by courts to determine the use of prior depositions against different parties under Rule 32(a)(4) is whether the party-opponent in the prior case had the same motive and opportunity to cross-examine the deponent as the present opponent. *See Minyen v. American Home Assurance*, 443 F.2d 788, 791 (10th Cir.1971); *Ikerd v. Lapworth*, 435 F.2d 197, 205–06 (7th Cir.1970); *Hertz v. Graham*, 23 F.R.D. 17, 22 (S.D.N.Y. 1958), *aff'd*, 292 F.2d 443 (2d Cir.), *cert. denied*, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961).

Braten, Soifer, and BAC have similar motives to defeat the claim that they attempted improperly to influence the South Carolina judge. It is unduly formalistic to state that Soifer and Braten were complete strangers to the Civil Rights Action. As this Court has ruled that Braten and Soifer are collaterally estopped from relitigating issues resolved against BAC in the revocation proceeding, it would be inconsistent to hold that Braten and Soifer are not successors in interest to BAC in the Civil Rights Action for the more limited purpose of treating the deposition testimony as if originally taken in this action. As previously noted, BAC was a defendant in that action, and as BAC's shareholders, Braten and Soi-

---

**6.** In its reply brief, Bankers argues that "whether or not particular depositions taken in [the Civil Rights Action] may be used at *trial* is not at issue now, and has no bearing on [the present] motion." Bankers Reply Brief at 5. Thus, this Court's discussion concerning the use of the depositions is limited to whether they will be treated as if originally taken in this action pursuant to Fed.R.Civ.P. 32(a)(4). Whether the documents are admissible at trial for purposes other than impeachment, which requires the witnesses' "unavailability" at the time of trial under Fed.R.Evid. 804(b)(1) or Fed.R.Civ.P. 32(a)(3), will be decided if and when that issue is presented and the Court is provided with the necessary information about unavailability of the witnesses.

fer had an interest in ensuring that BAC was exonerated from charges of judicial bribery.[7] BAC could only commit judicial bribery through the actions of a natural person associated with it, such as an officer or shareholder. Thus, BAC in attempting to defend itself from bribery charges would necessarily also be defending its officers and principal shareholders. For the foregoing reasons, Braten and Soifer are successors in interest to BAC within the meaning of the rule. *See Fullerform Continuous Pipe Corp. v. American Pipe & Constr. Co.*, 44 F.R.D. 453, 456 (D.Ariz. 1968) (court allows depositions to be used against defendants not present in the prior action because "[d]efendants common to both actions have the same primary interest—disproving the existence of a conspiracy").

The relationship between BAC and Braten and Soifer distinguishes the present case from cases cited by Soifer in support of his argument that the depositions cannot be treated as if originally taken in this action. Although these cases decide the admissibility of evidence at trial under Fed. R.Evid. 804(b)(1), their analysis is relevant to whether BAC and Braten and Soifer are successors in interest under Fed.R.Civ.P. 32(a)(4). For example, in *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.*, 505 F.Supp. 1190 (E.D.Pa.1980), *rev'd in part on other grounds*, 723 F.2d 238 (3d Cir. 1983); *rev'd in part on other grounds*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), a complex antitrust matter, the district court, in determining that prior defendants were not "predecessors in interest" to current defendants, held that defendants in the first action had no motive to inquire into the participation of the other defendants. The court stated, "[a]part from the

allegation of 'conspiracy,' there is no evidence of a 'community of interest' between the six respondents in the JFTC proceedings and the other eighteen defendants in this case, some of whom are not even Japanese corporations." *Id.* at 1292. Unlike the defendants in *Zenith*, however, Soifer, Braten, and BAC had a significant "community of interest" apart from the litigation. Soifer and Braten are the two shareholders of BAC, a defendant in the Civil Rights Action, and had an interest in ensuring that BAC was not found to have attempted improper influence of a judicial officer.

Soifer refers also to *In re Screws Antitrust Litig.*, 526 F.Supp. 1316 (D.Mass. 1981). In *Screws*, the court refused to find that criminal defendants were "predecessors in interest" to later civil defendants, noting the possibility that the defendants in the first action may have implicated defendants in the later action in order to exonerate themselves. However, no evidence has been offered to suggest that either BAC or Rhoades attempted to exonerate themselves at Soifer's or Braten's expense.[8]

Nor does a holding that the prior depositions are treated as if originally taken in this action hinder Soifer and Braten's ability to defend themselves from Bankers' allegations. Soifer and Braten retain the opportunity to take further depositions of or to submit written interrogatories to the witnesses deposed in the Civil Rights Action, to correct or clarify their testimony in the prior depositions. *See Hertz*, 23 F.R.D. at 23.

### Conclusion

For the foregoing reasons, Bankers' motion for collateral estoppel is granted as to

---

7. Braten claims that admission of the depositions would be improper, as BAC only attended the first session of the deposition of one witness. The depositions' appearance pages show that the law firm of Ruskin, Schlissel, Moscou & Evans, P.C., representing BAC, was present only at the taking of Rhoades' and Braten's depositions. Rhoades was present, appearing on his own behalf, at all the depositions. While Rhoades had been counsel to BAC in the bankruptcy proceedings before Judge Babitt and in a variety of other contexts, Rhoades was not

BAC's attorney in the Civil Rights Action. Nonetheless, Rhoades and BAC together had similar motives to disprove that judicial bribery had occurred and BAC had the opportunity to appear at all of the depositions.

8. Indeed, because Rhoades has been Braten's attorney since 1974 and continues to represent him in the current action, it is highly unlikely that Rhoades acted adversely to Braten's interests.

Braten and Soifer and denied as to Rhoades; the alternative motion for the admission of the testimony, evidence and judicial findings in the revocation proceeding is denied, and the motion to treat the prior depositions as if originally taken in this action is granted.

SO ORDERED.